PEOPLE *v* ROBY

1. CRIMINAL LAW—APPEAL AND ERROR—MANIFEST INJUSTICE.

Failure to make timely objection, as a general rule, precludes appellate review; however, an appellate court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial.

2. CRIMINAL LAW—TRIAL—JUDGE'S COMMENTS—WITNESSES.

Comments by the trial judge in the presence of the jury that he personally knew one of the prosecution witnesses, that the witness came from a good neighborhood, and that the witness had worked for the judge infringed upon the province of the jury to determine the credibility of the witnesses.

3. CRIMINAL LAW—TRIAL—JUDGE'S COMMENTS—PARTIALITY.

Comments by the trial judge, in a criminal case tried to a jury, totaling 55 pages of a 300-page trial transcript in which he assumed the role of the prosecutor, materially interfered with cross-examination by defense counsel, and made comments that could have been interpreted as belittling the defense displayed partiality that could have been detrimental to defendant's case and require reversal of defendant's conviction.

Appeal from Saginaw, James E. O'Neill, J. Submitted Division 3 November 3, 1971, at Lansing. (Docket No. 10062.) Decided February 22, 1972.

McArthur Roby was convicted of first-degree murder. Defendant appeals by delayed appeal granted. Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*
[2, 3] 5 Am Jur 2d, Appeal and Error § 622.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick, II,* Prosecuting Attorney, and *Duane T. Van Benschoten,* Assistant Prosecuting Attorney, for the people.

*John A. Picard,* for defendant.

Before: DANHOF, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J.   On June 10, 1965, while on duty as an attendant at a gasoline service station in the City of Saginaw, one Sakie Neymeiyer was shot and killed by the defendant.

At trial in Saginaw County Circuit Court, two other attendants at the same service station, eye-witnesses to the shooting, testified that the defendant had attempted to rob the station, that in defiance the deceased kicked the defendant, and that while the defendant was backing out the door, he fired a single shot.   Defendant admitted shooting the deceased, but denied any involvement in an armed robbery.   Defendant testified that he had entered the service station to use the restroom, that he drew his gun only when attacked by the deceased, and that the gun discharged when kicked by the deceased.   Defendant was subsequently found guilty by a jury of first-degree murder.   MCLA 750.316; MSA 28.548. We then granted defendant's application for delayed appeal.

Defendant raises a number of issues here.   First, defendant contends that the trial judge was guilty of prejudicial misconduct.   More specifically, defendant claims that several comments made by the trial judge in the presence of the jury and frequent ex-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tensive interrogation of witnesses by the judge constituted such interference as to deny defendant a fair trial. Defendant concedes that timely objection was not made at the trial, but claims that the interference by the judge resulted in such "manifest injustice" that this Court may take cognizance of the errors. We agree.

As a general rule, failure to make timely objection precludes appellate review. *People* v *McIntosh,* 34 Mich App 578 (1971). However, since appellate courts cannot condone manifest injustice, this Court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial. *People* v *Baker,* 7 Mich App 471 (1967) ; *People* v *Bedsole,* 15 Mich App 459 (1969). This is particularly appropriate here, where any objection had to be made to the judge relative to his own conduct.

The transcript of defendant's trial contains approximately 300 pages of testimony. Of these 300 pages, approximately 55 pages are devoted to comments by the trial judge and interrogation by him of various witnesses. In determining the effect of comment and interrogation by the trial judge, the applicable test is whether what occurred prevented defendant from having a fair and impartial trial. *People* v *Cole,* 349 Mich 175 (1957) ; *People* v *O'Hara,* 278 Mich 281 (1936). In matters of trial conduct the trial judge has great power and wide discretion. *People* v *Cole, supra; People* v *Young,* 364 Mich 554 (1961). But even though the trial judge has the power to participate properly in the questioning of witnesses, to control the conduct of witnesses, and the conduct of attorneys in his courtroom, *People* v *Cole, supra,* this power is not unlimited. *People* v *Wilson,* 21 Mich App 36 (1969). If an examination of the record reveals that the veil of judicial impartiality was pierced by the trial

judge, the case must be reversed. *People* v *Wilson, supra; People* v *Bedsole, supra.*

Despite the absence of a fixed rule on what a trial judge may or may not say, *People* v *Withrow,* 26 Mich App 679 (1970), the courts of this State have previously enunciated the standard of conduct expected of trial judges:

" * * * a judge before whom a jury case is being tried should avoid any invasion of the prosecutor's role." *People* v *Cole, supra,* 196.

"A judge may properly intervene in a trial of the case to promote expedition, and prevent unnecessary waste of time or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto." Canons of Judicial Ethics, Canon 15, quoted in *People* v *Wilson, supra,* 39.

Upon examination and review of the complete record, we are convinced that the trial judge's frequent comments and lengthy interrogations impaired "that balance of judicial impartiality necessary to a fair hearing". *People* v *Wilson, supra.* Even though in some instances here the trial judge was merely exercising his right to question witnesses for the purpose of clarifying their testimony, nevertheless the cumulative effect of his questioning and commenting overstepped the permissible bounds. A primary concern for jury consideration in this case was whether to believe the defendant's version of the shooting or that related by the two attendants. During the prosecution's examination of one of the two attendants the following took place:

"*Q.* (*by the prosecution*): How old are you now?

"*A.* Nineteen.

"*The Court:* You mean all your life up to now?

"*A.* Yes.

"*The Court:* You still have some to live?

"*A.* Yes.

"*The Court:* You hope, huh?

"*A.* Yes.

\*	\*	\*

"*Q.* Are you employed at the present time?

"*A.* Yes, I am.

"*Q.* Where is this?

"*A.* Saginaw Steering Gear.

\*	\*	\*

"*Q.* Is the work hard?

"*A.* Pardon?

"*Q.* Is the work hard?

"*A.* Bad enough.

"*The Court:* It's different than when you used to work for us?

"*A.* Yeah.

"*The Court:* Used to be our sidewalk shoveler and yard raker, isn't that right?

"*A.* Yes.

"*The Court:* He lives in a good neighborhood.

\*	\*	\*

"*Q.* What schools did you go to?

"*A.* Do you want all of them or just high school?

"*Q.* Well, did you finish high school?

"*A.* Yes I did. I went to Saginaw High. I also went to Central Junior.

"*The Court:* And to Longfellow?

"*A.* Yes, and John Moore, too.

"*The Court:* I see, they have got a new Longfellow now, you know?

"*A.* Yes.

"*The Court:* We're getting up in the world."

The comments and questions by the trial judge in the presence of the jury, that he personally knew one of these attendants and that the attendant came from a "good neighborhood" and had worked for the judge, can only be construed as being prejudicial to the defendant. In effect, the judge was clearly lending support to the credibility of one of the two eyewitnesses, when it is the sole province of the jury to determine the credibility of witnesses. *People v Padgett,* 306 Mich 545 (1943).

Further, the record indicates that the trial judge assumed the role of the prosecutor at various times, materially interfered with cross-examination by defense counsel, and made supposedly humorous comments which could have been interpreted by the jury as belittling the defense. Clearly, this is not a case where the questioning and comments by the trial judge were limited in scope, material to the issues in the case, and did not communicate to the jury any opinion that the trial judge may have had regarding these matters, so as to escape prejudicial error. *People v Piscunere,* 26 Mich App 52 (1970). But unfortunately, this is a situation where the trial judge, seemingly well-meaning in his exuberant pursuit to uncover the truth, displayed partiality that quite possibly could have influenced the jury to the detriment of the defendant's case. Therefore, because of the aforementioned reasons, we have no other recourse but to find that the defendant was denied a fair and impartial trial despite the evidence presented. *People v Smith,* 363 Mich 157 (1961); *People v Wilson, supra.*

We are not unmindful of the fact that similar conduct involving the same trial judge as in this case was treated in similar fashion by the Supreme Court in *People v Smith, supra.* As this case is re-

versed on the foregoing grounds, we do not feel it appropriate to evaluate defendant's other claims of error at this time.

Reversed and remanded.

All concurred.