PEOPLE v LONDON

1. CRIMINAL LAW—FAIR TRIAL—IMPARTIALITY.

Comments made by the trial judge in the presence of the jury which evidence hostility or irritation with the defendant deny him a fair trial.

2. CRIMINAL LAW—FAIR TRIAL—HASTY VERDICT.

A defendant is denied a fair trial where the court created an atmosphere conducive to hasty deliberation by the jury, threatened to continue the proceedings until four o'clock in the morning if necessary, and sent the jury, which had been on duty nearly 14 hours, out to deliberate for the first time at 10:55 p.m. on a Friday evening.

3. CRIMINAL LAW—FAIR TRIAL—IMPARTIALITY.

A defendant is denied a fair trial where the trial court's comments and interrogation of witnesses impairs that balance of judicial impartiality necessary to a fair hearing.

Appeal from Livingston, Paul R. Mahinske, J. Submitted Division 2 March 1, 1972, at Lansing. (Docket No. 10694.) Decided April 25, 1972.

Jack London, Jr., was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas Kizer, Jr.,* Prosecuting Attorney, and *John Patrick Conley,* Assistant Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 21 Am Jur 2d, Criminal Law § 234 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 222.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,* JJ.

McGREGOR, P. J. The defendant appeals his jury conviction of breaking and entering with the intent to commit larceny, MCLA 750.110; MSA 28.305.

Defendant's trial began on August 13, 1970, and was continued on August 14, 1970. When defendant began his defense, the trial court voiced some impatience and irritability with the defendant. During testimony of a defense witness, the following transpired:

> *"Mr. Schoemer [defense counsel]:* David, just a second. In the light of the court's caution to the narrative answers, perhaps I should bring this out in the question, or do you want to let him tell the story?
>
> *"The Court: I don't want to be here all summer, and I will tell you that."* (Emphasis added.)

The trial judge then again indicated dismay with the witness's testimony:

> *"The Court (Interposing):* David, you are supposed to be here testifying, I would assume, to help Mr. London. You are sitting mumbling to yourself, and you are not doing anybody any good. *I could care less,* but if you don't want the jury to hear what you have to say, you might as well step down from the witness stand and proceed with someone who will talk louder. Speak up." (Emphasis added.)

Finally, near the conclusion of the witness's testi-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mony, the court explicitly pressured counsel for both parties to hasten the pace of the trial:

"*The Court:* * * * I am going to warn both of you right now that *we are going to stay here until this case is concluded, and I don't care if that takes until four o'clock in the morning,* and you better start acting accordingly. I heard question after question asked of the man that were identical, and we have other witnesses coming up. *Regulate yourself to the fact that you are staying here until the case is concluded, and you have four more witnesses to go.*" (Emphasis added.)

When another witness for the defendant testified, the trial court again urged counsel to quicken the pace:

"*The Court:* I don't know about you, *but I value my time a little bit, and I don't care about half the questions and answers you are getting here.* It seems to me you got a pretty good idea what the alibi and defense is going to be, and let's get down to the meat of it, and I don't care whether her mother or father know how often she sees her boyfriend. What does that have to do with the credibility with regard to the materiality?" (Emphasis added.)

Against this background of a lingering threat to continue the trial until four o'clock in the morning and several admonishments to counsel to hasten the trial, the judge addressed the jury prior to the dinner recess and directly advised them of his concern with the pace of the trial:

"*The Court (Interposing):* Rather than get into the testimony and interrupt the continuity of the testimony, we have made arrangements at a restaurant for 5:30. That will give the jury enough time to call home if they want to. I imagine some of you will do that. You go out to dinner in the presence of the court officer all staying together. I want you to stay together for this particular meal, and this is on the house, so you can eat

it up over there, but before you leave, there is a telephone. There are two telephones in the office next to that room, and there is a telephone in my office which makes four lines available. I will let some of you come in there and call home and let your husbands and wives and children know what you are up against and make what plans you have to make, because we are going to continue on this matter this evening."

*(Whereupon at 5:20 p.m. the entire jury was recessed for dinner.)*

The jury returned at 7:05 p.m. and continued with the trial for approximately four more hours. At 10:55 p.m. the jury was sent out to deliberate; within 18 minutes, the jury elected a foreman and returned a verdict of guilty, at 11:13 p.m.

The main issue on appeal is whether defendant has been denied a fair trial where the court created an atmosphere conducive to hasty deliberation, threatened to continue the proceedings until four o'clock in the morning if necessary, sent the jury out to deliberate for the first time at 10:55 p.m. on a Friday evening, and the jury returned after 18 minutes with a verdict of guilty.

It is well recognized that the conduct of the trial judge during the course of trial can prejudice the jury and deny a defendant a fair trial. In *United States v Coke,* 339 F2d 183, 185 (CA 2, 1964) the Court stated:

"Appellant's principal contention, on this appeal is that the trial judge by excessive interference in the examination of the witnesses, by repeated rebukes and disparaging remarks directed at appellant's counsel and by marked impatience, all in the presence of the jury, displayed an attitude of partisanship which resulted in the denial of a fair trial and a deprivation of due process of law. While to some extent the admonitions were merited, because of defense counsel's predilection for dilatory tactics and his argumentative interrogation

of witnesses, nevertheless, we conclude that the comments of the trial judge were of such a nature that, in the context in which they were made, they must have improperly prejudiced the defense in the minds of the jurors. Where mild admonitions to counsel did not suffice, any sterner or more forceful directions which may have been warranted should have been given in the absence of the jury. Moreover, many of the comments do not appear from the record to have been at all justified. Although the judge's caustic and disparaging remarks were, for the most part, directed at defense counsel, they undoubtedly gave the jury the impression that the defendant's case was of little substance and was not worthy of very much attention."

Where the trial court, by the tone of his comments, evidences hostility or irritation with the defendant in the presence of the jury, the defendant is effectively denied his right to a fair trial. *United States v Koenig,* 300 F2d 377 (CA 6, 1962).

Similarly, the defendant is denied his right to a fair trial where the trial court creates an atmosphere which seemingly requires a hasty verdict and where the trial court sends a jury, which has already been on duty nearly 14 hours, out to deliberate under the threat that they will remain in deliberation until four o'clock in the morning if necessary. See *State of Arizona v Thomas,* 86 Ariz 161; 342 P2d 197 (1959), where the Supreme Court of Arizona held that, where an instruction to the jury indicates the court's anxiety for a hasty verdict, the conviction must be reversed and a new trial ordered, and *Kracht v Hoeppner,* 258 Iowa 912; 140 NW2d 913 (1966), where the Supreme Court of Iowa recognized the coercive effect of sending the jury out to deliberate late into the night, and held that a verdict produced by such deliberations cannot stand. See also 109 ALR 80, "Hastening Rendition of Verdict, In General", and

109 ALR 96, "Allusion to Inconveniences, Time to be Kept Together, or Time to Return Verdict".

Defendant also complains of extensive interference by the trial judge in the conduct of the trial by the trial court's determination to conduct examination of the witnesses. Though there are many examples, as a review of the transcript will indicate, the following is offered as illustrative:

*"The witness:* He said that he would not submit to any fingerprints or photographs until he talked to his attorney.

*"The Court:* Did he tell you who the attorney was?

*"The witness:* No.

*"The Court:* Did he tell you where the attorney was?

*"The witness:* No.

*"The Court:* Did he tell you where the attorney was located?

*"The witness:* No, he didn't.

*"The Court:* Did you ask him?

*"The witness:* No.

*"The Court:* Did you detect any odor of liquor?

*"The witness:* I didn't, no.

*"The court:* How about beer?

*"The witness:* No.

*"The Court:* How about wine?

*"The witness:* Nope.

*"The Court:* Any odor at all?

*"The witness:* No, I didn't.

*"The Court:* I have no other questions of this witness."

In *People v Roby,* 38 Mich App 387, 389–390 (1972), this Court stated:

"In determining the effect of comment and interrogation by the trial judge, the applicable test is whether what occurred prevented defendant from having a fair and impartial trial. *People v Cole,* 349 Mich 175 (1957); *People v O'Hara,* 278 Mich 281 (1936). In matters of

trial conduct the trial judge has great power and wide discretion. *People v Cole, supra; People v Young,* 364 Mich 554 (1961). But even though the trial judge has the power to participate properly in the questioning of witnesses, to control the conduct of witnesses, and the conduct of attorneys in his courtroom, *People v Cole, supra,* this power is not unlimited. *People v Wilson,* 21 Mich App 36 (1969). If an examination of the record reveals that the veil of judicial impartiality was pierced by the trial judge, the case must be reversed. *People v Wilson, supra; People v Bedsole,* [15 Mich App 459 (1969)], *supra."*

Here, as in *Roby, supra,* the trial court's comments and interrogations impaired "that balance of judicial impartiality necessary to a fair hearing". *People v Wilson, supra,* at p 38.

Reversed and remanded for a new trial.

All concurred.