PEOPLE v COLLIER

Docket No. 85740. Submitted February 3, 1987, at Detroit. Decided
February 18, 1988. Leave to appeal applied for.

Dillard Collier was convicted of assault with intent to do great
bodily harm less than murder, Recorder's Court of Detroit,
Michael J. Talbot, J. Defendant appealed, alleging error in the
admission of evidence of a scales possibly used for narcotics in
defendant's possession, in the court's refusal to allow a reopen-
ing of proofs to hear the testimony of a late-arriving witness,
and in the court's remarks indicating a special relationship
between the jury foreman and the judge.

The Court of Appeals *held:*

1. The court abused its discretion in allowing evidence con-
cerning the scales. There was no other evidence that drugs
were material to the crime charged or that defendant pos-
sessed, sold or used drugs.

2. The court abused its discretion in not allowing defendant
to reopen proofs to obtain the testimony of the late-arriving
witness. The testimony would have been helpful and would not
have given defendant an undue advantage or surprised or
prejudiced the prosecution. Nor would permitting the witness
to testify have caused a disruption of the proceedings.

3. The court's remarks to the jury foreman indicated a
special relationship between that juror and the court and

REFERENCES

Am Jur 2d, Assault and Battery §§ 96 *et seq.*

Am Jur 2d, Evidence §§ 339-343.

Am Jur 2d, Judges §§ 166 *et seq.*

Am Jur 2d, Trial §§ 87 *et seq.,* 156.

Attacking or supporting credibility of witness by evidence in form
of opinion or reputation, under Rule 608(a) of Federal Rules of
Evidence. 52 ALR Fed 440.

Construction and application of Rule 608(d) of Federal Rules of
Evidence dealing with use of specific instances of conduct to
attack or support credibility. 36 ALR Fed 564.

Propriety of reopening criminal case in order to present omitted or
overlooked evidence, after submission to jury but before return of
verdict. 87 ALR2d 849.

pierced the veil of judicial impartiality, unduly influencing the jury and denying defendant a fair trial.

Reversed and remanded.

M. J. KELLY, J., dissented. He believed that the implication that the scale was employed in drug use was probative of defendant's motive and was properly admitted. He also believed the court made no error in refusing to allow the late witness to testify and in its questions and comments to the jury foreman. He would affirm.

1. ASSAULT AND BATTERY — EVIDENCE — NARCOTICS — RULES OF EVIDENCE.

Evidence suggesting that defendant was involved in the possession, sale or use of narcotics, where not material, is inadmissible in a prosecution for assault (MRE 402).

2. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS — RULES OF EVIDENCE.

Evidence of other bad acts of a defendant may not be admitted for a proper purpose unless there exists substantial evidence that defendant actually perpetrated the bad act sought to be introduced (MRE 404[b]).

3. TRIAL — REOPENING PROOFS.

The allowance or denial of reopening proofs for either party rests in the sound discretion of the trial judge; relevant to the issue is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party.

4. CRIMINAL LAW — APPEAL.

Failure to make timely objection, as a general rule, precludes appellate review; however, an appellate court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial.

5. TRIAL — JUDGES — IMPARTIALITY — APPEAL.

A judge, in conducting a trial, has great power and wide discretion but his power is not unlimited, and if an examination of the record reveals that a trial judge has pierced the veil of judicial impartiality, a case must be reversed.

6. TRIAL — JUDGES — IMPARTIALITY — FAIR TRIAL — APPEAL.

The test to be applied to determine whether a trial judge has pierced the veil of judicial impartiality requiring reversal is whether his comments were of such a nature as to unduly influence the jury and thereby deprive a party of his right to a fair and impartial trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, and *Joseph A. Puleo,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan*), for defendant on appeal.

Before: WAHLS, P.J., and M. J. KELLY and C. W. SIMON, JR.,* JJ.

WAHLS, P.J. Defendant was convicted after a jury trial of assault with intent to commit great bodily harm less than murder, MCL 750.84; MSA 28.279. On March 15, 1985, he was sentenced by Detroit Recorder's Court Judge Michael J. Talbot to from six to ten years imprisonment. Defendant now appeals as of right, and we reverse based on three of the several issues raised on appeal.

The victim in this case, twenty-six-year-old Anthony Mitchell, testified that on September 14, 1984, he was visiting defendant, Dillard Collier, and his brother, Terrance Collier. During the visit, Mitchell refused to drive defendant to the east side of Detroit in order to "get his check cashed" because Mitchell's car insurance "wasn't very good." Subsequently, the three men purchased a pint of cognac, which they drank at defendant's house, and then went to a bar, with Mitchell wearing a shirt borrowed from Terrance. According to Mitchell, the three left the bar together at 2:00 A.M. and returned to defendant's home, where they began to talk. At that point, defendant became upset and told his brother Terrance not to listen to Mitchell because Mitchell had earlier refused to drive him to the east side. Mitchell

---

* Circuit judge, sitting on the Court of Appeals by assignment.

stated that he then moved to get his own shirt and leave the house, but first asked defendant why he had made his prior statement. Instead of replying, defendant struck Mitchell on the jaw. A scuffle ensued, and Terrance entered the fray, striking Mitchell on the side of the head once with his hand and twice with something other than his hand. The next thing Mitchell remembered was awakening in a hospital, apparently seven days later.

Mitchell had sustained numerous injuries, including a fractured jaw, a swelling on the left side of his head, multiple facial fractures, "split" vision, a "clogged" ear, multiple burns on his back, and multiple bruises and scars.

After medical and police testimony was elicited, defendant took the stand. Defendant's version of the facts differed markedly from Mitchell's. According to defendant, Mitchell had refused to drive him to the east side to cash a check, and he, Mitchell and Terrance purchased some brandy from a liquor store and returned to defendant's house to drink it. Mitchell borrowed a shirt from defendant and the three men left to visit a bar after defendant placed some of his money in a closet. Defendant maintained that he and his brother left the bar at 3:00 A.M. after being unsuccessful in their attempts to locate Mitchell. Upon returning home at about 4:30 A.M. or 5:00 A.M., defendant discovered Mitchell's car in the driveway and assumed Mitchell "was in the wrong for being in my house." Defendant entered the house, discovered Mitchell in the kitchen, and asked him what he was doing there. According to defendant, Mitchell then swung at him, but missed. Defendant then hit Mitchell once in the head with his fist, and Mitchell grabbed defendant and hit him on the shoulder. They were struggling together for

about two minutes when Terrance walked in and beat Mitchell numerous times with a broom and an unknown object. During this brawl, defendant either passed out due to intoxication for less than five minutes, or was knocked out by Mitchell, and thus did not observe everything that transpired between Mitchell and Terrance.

Defendant asserted that, when he woke up, he found Mitchell on the floor and called the police. After waiting ten to fifteen minutes for the police to arrive, defendant asked Terrance to again call the police.

The first issue raised by defendant concerns the admission into evidence of the photograph of a weight scale found in a bedroom of defendant's house. Defendant essentially argues that the photograph was irrelevant and highly prejudicial. The admissibility of evidence is a question that rests within the sound discretion of the trial court. This Court will not overturn a trial court's decision to admit or exclude evidence absent a clear abuse of discretion. *People v Solak,* 146 Mich App 659, 673; 382 NW2d 495 (1985). Since the photograph in issue did not depict gruesome representations of the victim in this case, we decline to review the issue under the rules applicable to such a situation, *People v Duby,* 120 Mich App 241, 256-257; 327 NW2d 455 (1982), and instead focus our analysis on the relevance and possible prejudice of the photograph.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Irrelevant evidence is inadmissible. MRE 402. Even if relevant, however, a trial court may choose to exclude evidence on the ground of prejudice, confusion, waste

of time, or needless presentation of cumulative evidence. MRE 403.

At trial, the prosecutor persuaded the court that the scale could explain a possible motive for the assault on Mitchell. He reasoned that defendant's anger at Mitchell was rooted not in Mitchell's refusal to drive defendant to the east side of Detroit for the purpose of cashing a check but in his refusal to drive him to the east side for the purpose of, ostensibly, obtaining narcotics—narcotics which would ultimately be weighed on the scale pictured in the photograph admitted into evidence. Defense counsel strenuously objected, pointing out that "there was [not] one speck of evidence that there was some dope found in the house, some narcotics found in the house," that the "scale could be used for any number of purposes," and that introduction of the photograph of the scale would therefore unfairly suggest the involvement of narcotics in the case. As a result, defense counsel concluded, defendant's credibility would be greatly undermined.

We agree with defendant that the trial court abused its discretion in admitting the photograph of the weight scale in this case. Absent the prosecutor's conjecture, there was no evidence that defendant wanted to go to the east side in order to purchase narcotics and not to cash a check. Thus, the prejudicial issue of drug involvement was injected into the case without an evidentiary basis. Defendant was not on trial for possession of a controlled substance, and the possession, sale, or use of drugs was not a material issue in the case. The introduction of evidence which suggested such possession, sale, or use therefore was tangential to the charged crime and could only divert the jury's attention, and perhaps imply that defendant was generally a bad man or of criminal character.

*People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973). Permitting the photograph of the weight scale allowed the jury to infer that defendant was guilty of the charged offense because he might have been involved in illegal drug transactions.

To the extent that the trial court's ruling may be based upon MRE 404(b), which permits the introduction of evidence for the purpose of, among other things, proving the motive for the charged offense, we also find an abuse of discretion. As we stated in *People v Cramer,* 97 Mich App 148, 156; 293 NW2d 744 (1980), lv den 411 Mich 862 (1981):

> Bearing in mind the high degree of prejudice inherent in evidence of an accused's other bad acts, our courts have traditionally required that the prosecution meet somewhat higher standards of admissibility for such evidence than is ordinarily required for other types of evidence. The leading case on point is *People v Wilkins,* 82 Mich App 260, 267-271; 266 NW2d 781 (1978), *lv den* 406 Mich 857 (1979). In essence, to admit evidence under the so-called "similar acts" doctrine it is necessary that the evidence of the defendant's other bad acts be substantial, relevant, and not unduly prejudicial to a matter which is material and in controversy in the case. While these principles (of evidentiary law) are readily applicable to the admission of any type of proffered evidence (see, *e.g.,* MRE 401, 403), they take on a special meaning when the evidence sought to be admitted in a criminal trial pertains to instances of bad or criminal acts of the defendant for which he is not presently on trial.

See *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982), adopting the *Wilkins* rule.

In this case, as mentioned above, the evidence of defendant's "other bad act" of purported drug

involvement was not substantial, but rather confined to the speculations of the prosecutor. Ultimately, it was based on the photograph of the weight scale itself, since defendant denied knowing anything about drug sales, as implied by the prosecutor, which may have occurred near the east side store where defendant wanted to cash his check. No other drug-related evidence was entered into evidence. We also note that, although motive has been claimed as the basis for the propriety of the weight scale evidence, the prosecutor specifically declined an invitation from the court to have the jury instructed as to motive. Although the commission of the prior bad act need not be proven beyond a reasonable doubt, there must exist "substantial evidence that the defendant actually perpetrated the bad act sought to be introduced." *People v Golochowicz, supra,* p 309. Since such "substantial evidence" did not exist in this case, we find that the applicable evidentiary safeguards were not met, and thus conclude that admission into evidence of the photograph depicting the weight scale constituted an abuse of discretion.

Second, defendant argues that the trial court erred in refusing to reopen the proofs to permit a late-arriving defense witness to testify. In this case, after both the prosecution and defense rested, and prior to closing arguments, defense counsel requested a reopening of the proofs to allow a late-arriving character witness to testify in behalf of defendant. The request was denied, the court merely ruling, "No, sir." Generally, the reopening of proofs for either the prosecution or defense rests within the sound discretion of the trial judge. *People v Lay,* 336 Mich 77, 79; 57 NW2d 453 (1953); *People v Egner,* 9 Mich App 212, 214-215; 156 NW2d 605 (1967). Relevant in ruling on a motion to reopen proofs is whether any undue

advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party. *Bonner v Ames,* 356 Mich 537, 541; 97 NW2d 87 (1959).

On appeal, the people argue that defendant was afforded every opportunity to present his defense and in fact proffered the testimony of his brother Rodney Collier and of two friends. Citing *People v Holguin,* 141 Mich App 268, 271; 367 NW2d 846 (1985), the people reason that the established rules of procedure and evidence designed to assure both fairness and reliability in trials mandate a finding that the trial court did not abuse its discretion in denying defendant's request to reopen proofs prior to having sent the case to the jury. We disagree.

Defendant's late-arriving witness was to testify to defendant's reputation in the community for truthfulness and honesty. MRE 803(21). Since defendant's account of how Mitchell was injured and Mitchell's account of what occurred in defendant's home on the morning of September 15, 1984, were clearly disparate in nature, truth and veracity were important ingredients in the case. If the jury believed defendant's story that Mitchell broke into his home and that upon entering his home defendant merely defended himself from Mitchell's physical attack, then a conviction of assault with intent to commit great bodily harm less than murder would have been unfounded.

The testimony of the late-arriving witness in this instance was elevated to greater significance because defendant's first character witness, Ronald Whittiker, stated that his understanding of defendant's reputation for truthfulness and honesty was based on his personal belief and on the failure of others in the community to assert that defendant had a reputation for untruthfulness or dishonesty. The trial judge, in discussing jury instructions

with counsel, suggested that because Whittiker's testimony was "in the negative," i.e., concerned the absence of a reputation for untruthfulness and dishonesty and not the presence of a reputation for truthfulness and honesty, Whittiker was "not a proper character witness." Counsel agreed, and accordingly the jury was not instructed regarding character evidence. If the late-arriving witness, who apparently arrived just moments after counsel agreed that a character evidence jury instruction was not warranted under Whittiker's testimony, had been permitted to testify, then not only may proper character evidence have been presented to the jury, but defendant may have been able to include a jury instruction regarding character evidence in the charge to the jury.

Moreover, there has been no showing that defendant would have received any undue advantage or that the people would have sustained any surprise or prejudice by permitting the character witness to testify. Since the prosecution was prepared to meet the testimony of defendant's first character witness, we fail to discern any undue hardship or surprise redounding upon the people in permitting the late-arriving character witness to testify. There would have been little or no disruption in the court or deviation from procedure since the last witness in the case, Ronald Whittiker, had just finished testifying. After Whittiker left the stand, the trial judge announced to the jury that "both sides have rested," made a few comments, and excused the jury "for a couple minutes" at 2:48 P.M. Counsel and the judge discussed the jury instructions for a few minutes, and defendant's attorney requested that the late-arriving witness be permitted to testify. The request was denied, and the jury was called back into the courtroom at 2:59 P.M. to hear closing arguments. Because under

these circumstances no prejudice or disruption would have resulted, and because testimony regarding defendant's reputation for truthfulness and veracity would have been a great asset to defendant in this case, we find that the trial court's refusal to reopen the proofs to permit defendant's late-arriving character witness to testify constituted an abuse of discretion.

Third, defendant argues that certain comments made by the trial judge to the jury foreman, Attorney Robert Mitchell, denied him his right to trial by an impartial jury. Defendant reasons that the trial judge's remarks demonstrated a partiality toward the foreman, placing the latter in a "favored position" to unduly influence the jury. US Const, Am VI; Const 1963, art 1, § 20; *People v Bigge,* 297 Mich 58, 64; 297 NW 70 (1941). Defendant also argues, citing *People v Cole,* 349 Mich 175, 199-200; 84 NW2d 711 (1957), that the trial court's remarks denied him a fair trial by improperly piercing the veil of judicial impartiality.

Trial counsel failed to object below. As a general rule, this Court will not review allegations of error based on the conduct of the trial court in situations where no objection was made at the trial court level. *People v Bouknight,* 106 Mich App 798, 807; 308 NW2d 703 (1981), rev'd on other grounds 419 Mich 458, 490 (1984). However, since appellate courts cannot condone manifest injustice, this Court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial. *People v Roby,* 38 Mich App 387, 389; 196 NW2d 346 (1972). Such review without benefit of an objection at the trial court level has been characterized as "particularly appropriate" in cases such as this, where any objection had to be made to the trial judge himself concerning his own conduct. *Id.* Portions of the record should not be

taken out of context in order to show trial court bias against defendant; rather, the record should be reviewed as a whole. *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 380; 268 NW2d 656 (1978), lv den 406 Mich 916 (1979), cert den 444 US 1034; 100 S Ct 707; 62 L Ed 2d 671 (1980).

Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. *People v Cole, supra,* p 199. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. *People v London,* 40 Mich App 124, 129-130; 198 NW2d 723 (1972); *People v Wilson,* 21 Mich App 36, 37-38; 174 NW2d 914 (1969). The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *People v Rogers,* 60 Mich App 652, 657; 233 NW2d 8 (1975), lv den 406 Mich 918 (1979). See *People v Burgess,* 153 Mich App 715, 719; 396 NW2d 814 (1986).

In this case, we conclude that the trial judge's remarks to the jury foreman, Attorney Robert Mitchell, pierced the veil of judicial impartiality so as to unduly influence the jury. The remarks established an ambiance of collegiality or camaraderie between the judge and the jury foreman such that it was apparent the foreman shared a special relationship with the judge. First, during the voir dire of the jury, attention was focused upon Robert Mitchell by the judge during the following colloquy:

> *The Court:* Now ladies and gentlemen, are you familiar, by chance, with this case or any of the parties or witnesses involved? Okay.

Mr. Mitchell, you would have familiarity with the prosecutor, with the officer in charge, with the defense counsel and probably some of the witnesses, wouldn't you?

*Juror Mitchell:* I think I almost know the defendant. I don't know him by face.

*The Court:* He looks familiar to you, does he?

*Juror Mitchell:* Yes he does.

\* \* \*

*Juror Mitchell:* I'm sorry. I don't know the other parties.

*The Court:* Okay.

*Juror Mitchell:* Sergeant Christopher I know quite well out of 16, and Mr Reynolds [the assistant prosecuting attorney] I know, fine young man, and Mr. Parzen [the defense attorney] is also a fine young man.

*The Court:* You've done battle against one side of the table, and you've probably sat with Mr. Parzen on occasion.

Mr. Mitchell does this sort of work for a living. He's a notorious—I think is probably the way to put it—criminal defense lawyer in the State, and so would be familiar with just about everybody.

During the judge's questioning of the potential jurors, he requested information regarding the employment of their spouses. The following exchange occurred between the court and Robert Mitchell:

*The Court:* Mr. Mitchell, we know of your work, and as to Mrs. Mitchell?

*Juror Mitchell:* Unemployed.

*The Court:* Much to your chagrin.

As the voir dire continued, a potential juror who happened to be a bar owner was called, and the judge commented: "In one of Mr. Mitchell's temporary enterprises he was a bar owner." And, finally,

after both counsel stated their satisfaction with the jury panel, the trial judge, in the presence of the jury, entered into the following conversation with Robert Mitchell and a defense attorney named Jay Nolan:

> *The Court:* We have a jury.
>
> Do you have any cases you've got to be in other courts on? We could have—Mr. Mitchell, if you have any cases that you have to be in court for today or tomorrow, I can see to it that Mr. Nolan handle them.
>
> *Mr. Nolan:* I'd be happy to, Your Honor.
>
> *The Court:* Yes. We'll take a recess in case you have any matters you have to go over in terms of calendar. We could defer to Mr. Nolan. He can handle them for you.

We find that the atmosphere in the courtroom created by these comments to Robert Mitchell established a rapport between the judge and Mitchell in the eyes of the jury which served to lift the veil of judicial impartiality. In his remarks before the jury, the judge revealed a knowledge of Robert Mitchell's apparent past business venture and of his past professional work as an attorney, as well as a willingness to take a recess in order to permit Robert Mitchell the opportunity to resolve any scheduling conflicts created by defendant's criminal trial. Such apparent familiarity with, and eagerness to accommodate, a juror by a judge may easily be interpreted by jurors as evidencing a special relationship between the judge and the juror and thus confers upon the juror more influence than he or she would otherwise have enjoyed on the jury panel. In such a circumstance, judicial impartiality is breached and, as a result of the status enjoyed by the favored juror, the defen-

dant's right to a fair and impartial trial is impermissibly risked.

Accordingly, we conclude that defendant's conviction of assault with intent to commit great bodily harm less than murder must be reversed. In view of this conclusion based on the three issues addressed in this opinion, we need not review the remaining issues raised by defendant on appeal.

Reversed.

C. W. Simon, Jr., J., concurred.

M. J. Kelly, J. *(dissenting).* I would affirm.

It is true that the prosecutor argued that the photograph depicting a weight scale was evidence of the possible motive for the extreme force and violence visited on the victim. The prosecutor's theory was that defendant was angry because the victim refused to take him to a place where he could buy drugs. Because the victim refused defendant's request, defendant had a motive to assault him. Such a motive for these criminal acts was more believable than the defendant's theory that Mitchell merely refused to drive him to a place where he could cash his check. Defendant did in fact cash his check long before the altercation.

MRE 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

See *People v Cramer,* 97 Mich App 148, 155; 293 NW2d 744 (1980), lv den 411 Mich 862 (1981); *People v Fisher,* 77 Mich App 6, 11; 257 NW2d 250 (1977), lv den 402 Mich 811 (1977).

> In essence, to admit evidence under the so-called "similar acts" doctrine it is necessary that the evidence of the defendant's other bad acts be substantial, relevant, and not unduly prejudicial to a matter which is material and in controversy in the case. [*Cramer, supra,* p 156.]

Here, the photograph of the scale was repetitive of testimony that the photograph depicted a weight scale found in a bedroom. However, it appears that the photograph showed the jury the exact type of scale, information which was not given by the witness. The implication that the scale was used in drug use or apportioning was probative of defendant's motive. For that reason I find no error in admitting the photograph of the scale under MRE 404(b).

I also find the majority's analysis of the trial judge's decision not to allow a late arriving witness to testify in error. Counsel had already agreed that a character evidence jury instruction was not warranted under the testimony of defendant's character witness who had testified, and there is no reason to presume that the late-arriving witness would have done better or that the trial judge abused his discretion in refusing to reopen the proofs.

Finally, I find no error in the judge's attempt to inject some levity during the voir dire of Robert Mitchell, a criminal defense attorney who was presumably well known to all court personnel including defense counsel and which drew no ob-

jection from opposing counsel. We have sanctioned the seating of judges and lawyers as jurors and I find no abuse of discretion as to the trial judge's decision on this juror's impartiality. The jury was not tainted by the trial judge's questions and comments to Mr. Mitchell. Defendant was not denied a fair trial by impartial jury.

I would affirm.