NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0724n.06
Filed: November 24, 2008

No. 07-1795

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| QUINN POINDEXTER, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAYMOND BOOKER, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: COLE and GIBBONS, Circuit Judges; FORESTER, Senior District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. The warden appeals the judgment of the district court conditionally granting a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 to petitioner-appellee Quinn Poindexter. The district court held that Poindexter received ineffective assistance of counsel and that the Michigan Court of Appeals's finding to the contrary was an unreasonable application of Supreme Court precedent. For the following reasons, we agree and affirm the judgment of the district court.

I.

This case arises from the shooting of Timothy Ruff late one night in Detroit. Ruff testified that he walked alone past Poindexter's house on his way to meet friends at approximately two

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

o'clock in the morning. As Ruff passed Poindexter's home, according to Ruff's testimony, Poindexter ran out of the house without a shirt, pants, socks, or shoes. He had a long gun and, without warning, shot at Ruff multiple times. The third shot, fired from approximately ten to fifteen yards away, hit Ruff in the forehead, destroying one eye and displacing the other from his eye socket. Ruff testified that he did not name his assailant when asked by police officers at the scene, but informed the police that the shooter lived in the "third house" and pointed towards the home that Poindexter, Walter Petty, Jr., Sabrina Moore, and Dion Griffin shared. At the time Ruff pointed at the house, his eyes had already been destroyed. Ruff survived but is blind as a result.

The prosecution's theory was that the shooter thus ran out of his house half-naked, unprovoked, and shot Ruff. The state presented two witnesses to the Michigan trial court who identified Poindexter as the shooter, Poindexter's roommate Petty and Ruff. Petty did not name Poindexter as the shooter until approximately eighteen days after the shooting, when he himself was questioned by the police about his involvement in an unrelated altercation. Petty then informed the police that Poindexter had gone to Petty's girlfriend's house after the shooting to find Petty. In contrast to Ruff's testimony that Ruff was walking alone and was shot for no reason, Petty alleged that Poindexter confided in him that three men were trying to break into Poindexter's car and shot at Poindexter when he came outside. According to Petty, Poindexter said that after the three men shot at him, he shot back and noticed that two men fled and one man was lying on the ground.

On approximately the same day that Petty implicated Poindexter in the shooting, Ruff identified the shooter as "Big 50," Poindexter's nickname. Ruff stated that he had not mentioned

2

"Big 50" at the time of the shooting because he was afraid that the shooter was still there and would shoot him again.

Following a bench trial, the trial court acquitted Poindexter of the charged offense, assault with intent to murder, but found him guilty of the lesser included offense of assault with intent to commit great bodily harm less than murder and felony firearm. Poindexter was sentenced to thirteen and one half years to twenty years in prison for assault and two years in prison for felony firearm. Poindexter timely appealed and filed a motion to remand for an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973) ("*Ginther* hearing"). *People v. Poindexter*, No. 233907 (Mich. Ct. App. Apr. 25, 2002). The Michigan Court of Appeals granted the motion, and Poindexter presented three days of testimony alleging ineffective assistance of counsel. Poindexter argued that his counsel, Robert Slameka, failed to call alibi witnesses, failed to call a medical expert to testify to the victim's medical records, and misadvised Poindexter not to testify.

Three alibi witnesses, Dion Griffin, Sabrina Moore, and Violet Hicks, all testified at the *Ginther* hearing that Poindexter was innocent and that they were with Poindexter in the home he shared with Griffin, Moore, and Petty at the time of the shooting. All three said that Poindexter did not leave the house until after he heard shots, and then he called the police. Notably, Griffin and Moore recounted that Petty was agitated, said someone owed him money, and left the same house angrily moments before they heard shots. Their testimony established that Petty had a motive to shoot someone that evening and that he exited shortly before the shooting from the same "third" house that Ruff indicated to the police. Their testimony thus not only supported Poindexter's innocence but also implicated Petty.

3

Juawanda and Robert Robinson, neighbors of Poindexter and Petty, also testified at the *Ginther* hearing. Juawanda Robinson stated that she heard two people arguing immediately before the gun shots. She also heard Ruff identify "Red"[1] as the shooter to the police at the scene. The Robinsons stated that they had not received subpoenas to testify at trial, though Slameka testified that he had subpoenaed them. Nevertheless, they appeared at Poindexter's trial after a neighbor told them to attend. They happened to arrive during closing arguments, and Slameka declined to request a continuance or to request that the proofs be reopened in order to call the Robinsons as witnesses. Thus five witnesses were not called to testify at Poindexter's trial, who together would have offered testimony that Ruff's initial identification of the "third house" and "Red" as the shooter applied equally to implicate Petty as to Poindexter, that Petty had a motive to shoot someone that evening, and that Poindexter was in his bedroom at the time of the shooting.

After three days of testimony, including an attempt by Poindexter to present evidence that he passed a lie detector test, the trial court held that Slameka's failure to call witnesses and his advice to Poindexter not to testify were part of his trial strategy. The trial court concluded that counsel had not been ineffective.

Poindexter timely appealed, alleging ineffective assistance of counsel on five grounds: "[Slameka] (1) failed to present a defense; (2) failed to call credible and available defense witnesses; (3) advised defendant not to testify; (4) failed to disclose his prior representation of a prosecution witness; and (5) failed to call an expert or physician to explain the contents of the victim's medical records." *People v. Poindexter*, No. 233907, 2003 Mich. App. LEXIS 2638, at *6 (Mich. Ct. App.

---

[1] It is unclear from the record who "Red" is.

4

Oct. 21, 2003) (footnote omitted). The Michigan Court of Appeals found that Poindexter did not overcome the strong presumption that his counsel's decisions were based on trial strategy and did not show that, but for counsel's mistakes, the result of the trial would have been different.

Poindexter then filed an application for leave to appeal in the Michigan Supreme Court, arguing actual innocence and failure by the Michigan Court of Appeals to consider his polygraph results, which verified his innocence, when affirming Poindexter's conviction. *Poindexter v. Booker*, No. 05-CV-71607, slip op. at 7 (E.D. Mich. May 30, 2007) ("*Poindexter*"). The Michigan Supreme Court denied Poindexter's application for leave to appeal.

Poindexter filed a petition in the United States District Court for the Eastern District of Michigan for a writ of *habeas corpus*, arguing that 1) "the state court's decision that trial counsel was not ineffective was contrary to and an unreasonable application of Supreme Court precedent"; and 2) Poindexter "is actually innocent." *Poindexter III*, slip op. at 7. In his ineffective assistance of counsel claim, Poindexter alleged six ways in which counsel was ineffective. The district court found that two of the grounds warranted *habeas* relief. First, the district court found that trial counsel's decision not to present alibi witnesses was not based in sound trial strategy and prejudiced the outcome of the trial. Second, the district court found that trial counsel failed to subpoena and produce two additional witnesses, and but for this failure to request a continuance when they did not appear or to move to reopen the testimony when they did appear, there is a reasonable probability that the outcome would have been different. The district court thus concluded that trial counsel was ineffective and conditionally granted *habeas* relief.

5

The warden timely appealed to this court. The warden next made a motion to stay the issuance of the writ pending appeal. Poindexter responded to the warden's motion, moved for immediate bail release from custody, and made a motion for an unconditional writ of *habeas corpus* and immediate release. On September 20, 2007, the district court entered a published order denying Poindexter's motion for an unconditional writ of *habeas corpus*, granting the warden's motion to stay the writ of *habeas corpus* pending appeal, and granting Poindexter's immediate release on bail. *Poindexter v. Booker*, No. 05-CV-71607, slip op. at 1, 8 (E.D. Mich. Sept. 20, 2007). The district court denied the warden's motion for reconsideration of Poindexter's release on bond pending appeal. *Poindexter v. Booker*, No. 05-CV-71607, slip op. at 1 (E.D. Mich. Oct. 26, 2007).

II.

We review *de novo* a district court's grant of a writ of *habeas corpus*. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000). Findings of fact by the district court are reviewed for clear error unless the district court's factual determinations are based only on a review of the state court transcript, in which case they are reviewed *de novo*. *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006). Factual determinations by a state court are presumed to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a state prisoner *habeas* relief only if the state court's decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

28 U.S.C. § 2254(d). The state court's decision must be not only incorrect but also objectively unreasonable. *Rompilla v. Beard*, 545 U.S. 374, 404 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The Supreme Court has held that the "unreasonable application" language permits a reviewing court to grant *habeas* relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. In analyzing whether a state court decision is an "unreasonable application" of Supreme Court precedent, a federal court should rely only on Supreme Court holdings, not *dicta*. *Id*. at 412.

A.

In order to obtain *habeas* relief for ineffective assistance of counsel, Poindexter must show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent, namely *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that defense counsel was ineffective only if the defendant showed that 1) counsel's performance "fell below an objective standard of reasonableness"; and 2) this deficient performance prejudiced the defense. *Id*. at 688, 692. In order to prove the performance prong, Poindexter must overcome a strong presumption that the action was part of "sound trial strategy." *Id*. at 689. In order to prove the prejudice prong, Poindexter must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In analyzing the merits of an ineffective assistance claim, we review the claim *de novo* since it is a mixed question of law and fact. *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004). The district court found that two separate inactions of counsel warranted *habeas* relief: counsel's

7

failure to investigate alibi witnesses and to investigate witnesses who would have supported the theory that another person shot the victim. We find that *habeas* relief on both grounds was properly granted.

B.

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Id*. at 690, decisions made by counsel after less thorough investigations "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 691. In determining what is objectively unreasonable, we "conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 688-89) (internal citations omitted).

Counsel's duty to investigate has been repeatedly reaffirmed by the Supreme Court. In *Wiggins*, the Supreme Court found counsel ineffective for unreasonably failing to investigate Wiggins's background for mitigating evidence. *Id*. at 534. Though presented with social service records that hinted at Wiggins's troubled past, counsel failed to investigate and thus failed to uncover his extensive history of physical, sexual, and psychological abuse. While emphasizing that

8

*Strickland* does not require defense counsel to investigate every conceivable evidence trail, the Court nevertheless held that counsel's "decision to end their investigation when they did was neither consistent with the professional standards that prevailed [at the time], nor reasonable in light of the evidence counsel uncovered . . . evidence that would have led a reasonably competent attorney to investigate further." *Id*. The Court concluded that counsel's "incomplete investigation was the result of inattention, not reasoned strategic judgment." *Id*.

Similarly, the Supreme Court in *Williams* found defense counsel constitutionally ineffective for failing to investigate Williams's background. *Williams*, 529 U.S. at 399. The Court found that Williams's attorneys unreasonably failed to seek records and "failed even to return the phone call of a certified public accountant who had offered to testify" on Williams's behalf. *Id*. at 396.

Consistent with *Wiggins* and *Williams*, we have also granted *habeas* relief when counsel failed to investigate, particularly when counsel declined to interview key defense witnesses. Although our decisions are not controlling under AEDPA, they offer insight on the reasonableness of the state court's application of *Strickland*. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) ("While the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."). In *Ramonez v. Berghuis*, we found that counsel was ineffective when counsel recognized the possibility that three witnesses could provide testimony beneficial to the defendant and yet failed to interview them. 490 F.3d 482, 489 (6th Cir. 2007). In *Towns v. Smith*, we explicitly stated that counsel's "duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or

9

innocence." 395 F.3d 251, 258 (6th Cir. 2005); *see also Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting Sixth Circuit cases where counsel was found ineffective for failing to investigate potential alibi witnesses). These cases demonstrate that the failure to interview key defense witnesses is objectively unreasonable in light of *Strickland*.

In this case, Poindexter's counsel, Slameka, failed to investigate two witnesses, Dion Griffin and Sabrina Moore, who told Slameka that they were with Poindexter at the time of the shooting. Griffin lived with Poindexter and Petty, and Moore, also a roommate, was Poindexter's fiancée. Griffin testified at the *Ginther* hearing that he would have testified at trial that he was with Poindexter during the shooting. After watching television together, he and his girlfriend went to their room, and Poindexter and Moore went to their own bedroom. He testified:

> Petty came, got the phone, which was in, I believe Mr. Poindexter's room, got it from him. He went to the back, but when he came in, what I do remember about that night is that he was a little agitated. And he was a little aggressive with his tone that night. . . . Not even 10 minutes had went by from the phone conversation, before he turns and leaves. . . . I heard the door slam. . . . I mean just 10 minutes after that door shut, I would hear shots. . . . maybe three, four.

(*Ginther* Hearing Transcript ("GHT") at 81.) After hearing shots, Griffin said that he and his girlfriend left their bedroom and followed Poindexter onto the front porch. Poindexter was carrying the phone that Petty had left behind. A neighbor told them to call the police, and Poindexter "had told her [he was] calling them." *Id*. at 83. In further defense of Poindexter, Griffin testified at the *Ginther* hearing that he had never known Poindexter to own any guns, but he knew Petty owned several guns.

Although Griffin accompanied Poindexter to meet with Slameka, Slameka never interviewed him. Griffin also testified that, without being interviewed by Slameka, he nevertheless approached

10

Slameka on a later date and offered to testify at Poindexter's trial. According to Griffin, Slameka "was really adamant on not listening, and not really taking interest in what we were saying." *Id*. at 92.

Moore similarly testified at the *Ginther* hearing that she was with Poindexter in their bedroom when Petty entered the house, said someone owed him money, made a phone call, and left the house. She accompanied Poindexter to five of his meetings with Slameka and reported that Slameka never once asked her questions regarding the shooting even though he knew that she was with Poindexter that evening.

Poindexter must overcome the presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In this case, however, Slameka's failure to call Griffin and Moore is objectively unreasonable. When Poindexter mentioned Griffin and Moore as potential witnesses the first time he met with Slameka, Slameka told him that the judge would not find them credible witnesses because of their close relationships with Poindexter. As the district court noted, this reasoning is deficient because alibi witnesses often have close relationships with the defendant. *Poindexter*, slip op. at 15. At the *Ginther* hearing, when Slameka was asked why he did not call Griffin, he responded, "I can't honestly give you an answer to that." (GHT at 35.) As in *Wiggins*, counsel was aware of evidence potentially beneficial to the defendant and failed to investigate further. Though counsel must not investigate every conceivable line of evidence, the decision not to call Griffin and Moore was not within a "range of legitimate decisions," *Strickland*, 466 U.S. at 689, and is not the product of sound trial strategy. Failure to investigate two alibi witnesses,

11

particularly when the witnesses both personally offered to provide testimony beneficial to Poindexter, is therefore objectively unreasonable, and the state court's decision to the contrary was an unreasonable application of *Strickland*.

Given that Slameka's performance is deficient, Poindexter must also show that this performance prejudiced him "resulting in an unreliable or fundamentally unfair outcome." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001); *Strickland*, 466 U.S. at 692, 694. Poindexter must show that there is a reasonable probability that but for Slameka's failure to investigate Griffin and Moore, the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Wilson v. Parker*, 515 F.3d 682, 698-99 (6th Cir. 2008). The district court relied on the trial court's statement that either Petty or Poindexter shot Ruff to conclude that there was a reasonable probability that if Slameka had called Griffin and Moore to testify, the totality of the evidence "would have supported a finding that Petty, not [Poindexter], was the shooter." We agree.

According to Griffin, Poindexter was in his bedroom with Moore when the shots were fired and could not have left the house without Griffin's seeing him. According to Moore, Poindexter was in his bedroom with her when the shots were fired and did not leave the bedroom until after Ruff was injured. This testimony is sufficient to undermine confidence in Poindexter's conviction, and we affirm the district court's finding of ineffective counsel and grant of *habeas* relief on this ground.

C.

Poindexter also alleges that Slameka failed to investigate two additional witnesses who would have provided further beneficial testimony. As noted above, trial counsel's decision whether

12

to investigate witnesses is given "a heavy measure of deference" and is reviewed for objective unreasonableness. *Strickland*, 466 U.S. at 691.

Juawanda and Robert Robinson are Poindexter's neighbors. Slameka testified at the *Ginther* hearing that he both called and subpoenaed the Robinsons. The Robinsons testified that they did not receive a subpoena, and Slameka has no documentation to show that he sent a subpoena. Juawanda Robinson testified at the *Ginther* hearing that she was prepared to recount that she heard two men arguing immediately prior to the shooting. She also heard the victim tell the police that "Red shot me." Robert Robinson testified that he was going to sleep and was awakened by the shooting. He saw Ruff crawling on the ground and, in response to a question by the police, pointing in the direction that the shooter fled.

The Robinsons appeared at trial to testify during Slameka's closing arguments. They stated that though they did not receive a subpoena, a neighbor told them to testify. When they arrived in court, Slameka did not ask to reopen proofs. Poindexter was adamant before trial that the Robinsons testify and recounted the following as to what happened when they did appear:

> Then I asked him, I was like Robinsons is here. He was like just telling me to shut up. I was like they witnesses, what are you talking about. Then he was like he was like he went on with his closing argument. But I did ask him to do one thing. I asked could you at least put it on the record they showed up or something. He said how am I supposed to do that. I said you attorney. By that time I had got upset, because I felt then – I felt by that time that he was railroading me.

(GHT at 176.) After being asked by Poindexter, Slameka did ask the court to note that the witnesses had appeared. Slameka testified that he did not ask to reopen proofs because he thought it would be "peculiar" to postpone closing arguments. (GHT at 35.) As the district court noted, "under Michigan law, it is within a trial court's discretion to reopen proofs to permit a late-arriving witness

13

to testify." *Poindexter*, slip op. at 20 (citing *People v. Collier*, 425 N.W.2d 118, 121 (Mich. Ct. App. 1988)). The trial court held that Slameka was not ineffective in failing to call the Robinsons because they were not eyewitnesses. The Michigan Court of Appeals affirmed, holding that Slameka had made a "strategic decision" not to call them.

While "[i]t is true that *Strickland* and *Wiggins* compel a federal habeas court to give a wide berth to trial counsel's actions," *Ege v. Yukins*, 485 F.3d 364, 379 (6th Cir. 2007), there is a limit to that deference. *Id*. at 378; *Ramonez*, 490 F.3d at 489 ("Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation."). Given that the Robinsons would have offered beneficial testimony on behalf of Poindexter and that they were available to testify, Slameka's failure to investigate the Robinsons before trial or attempt to reopen the proofs when they did appear at trial is neither "strategic" nor reasonable. We find that Slameka's performance was deficient in this regard and that the conclusion by the Michigan Court of Appeals to the contrary was an unreasonable application of *Strickland*.

To satisfy the second prong of *Strickland*, Slameka's deficient performance must have prejudiced Poindexter. Juawanda Robinson's testimony would have undermined the victim's identification of Poindexter, since she heard the victim tell the police that "Red" shot him. Juawanda Robinson's testimony that she heard two men arguing before the gunfire would have strengthened the implication of Petty as the shooter, since it is consistent with the alibi witnesses' accounts that Petty left the house angrily at about that time. Robert Robinson would have testified that he saw the

14

victim point in the direction in which the shooter fled, which could have undermined the victim's testimony that he did not identify the shooter because he feared the shooter was still present. But for the absence of the Robinsons' testimony that could have undermined or impeached Ruff and further implicated Petty, there is a reasonable probability that the result of the proceeding would have been different. Slameka's failure to investigate the Robinsons before trial or to ask for a continuance of closing arguments when they appeared late to trial therefore prejudiced Poindexter. Both prongs of the *Strickland* test are satisfied, and Slameka's failure to investigate the Robinsons is ineffective assistance of counsel and warrants *habeas* relief.

III.

For the foregoing reasons, we affirm the judgment of the district court.

15