### BONNER *v.* AMES.

1. WORDS AND PHRASES—BLOCK.

  The word "block," as a measurement of distance, is a part of our common speech and while not a word of precise meaning since we have short blocks and long blocks, it is capable of precise definition in any context should precision be material.

2. TRIAL—REOPENING PROOFS—DISCRETION OF COURT.

  The matter of reopening proofs is a matter within the sound judicial discretion of a court.

3. SAME—REOPENING PROOFS—ABUSE OF DISCRETION—PROOF OF DISTANCE.

  It was an abuse of discretion for trial court in pedestrian's action against motorist to deny plaintiff's motion to reopen proofs and have jury view scene of accident, made immediately after close of plaintiff's case and defendant's motion for directed verdict but before latter motion had been decided, in order to establish distances in feet instead of blocks, since the case had not proceeded to such a point nor conditions so changed, that any undue advantage would be taken by plaintiff and defendant was not taken by surprise or prejudiced and the trial court not inconvenienced.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—REOPENING PROOFS—NEW TRIAL.

  No comment is made on the issues of negligence and contributory negligence in pedestrian's action against motorist, where case is remanded for new trial because of an abuse of discretion in denying plaintiff's motion to reopen proofs.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted April 7, 1959. (Docket No. 11, Calendar No. 46,994.) Decided June 6, 1959.

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 53 Am Jur, Trial § 123.
[4] 3 Am Jur, Appeal and Error § 971.

Case by Oscar Bonner against Herbert Ames for damages for personal injuries sustained when struck by automobile. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Dann, Rosenbaum & Bloom,* for plaintiff.

*Williams, Frisbee & Ryal,* for defendant.

SMITH, J. The case before us involves an automobile-pedestrian accident in the city of Detroit.

The accident occurred after midnight, between 1 and 2 o'clock in the morning, on Woodward avenue. It was "nice weather" in early September, warm, dry, and clear. The street lights were burning. Plaintiff, on his way to see his partner (who worked at Briggs and got home in the early morning), attempted to cross Woodward avenue, from east to west. He had had, it was brought out upon cross-examination, 2 "shots" of gin. He attempted the crossing at Piquette, which at this point does not continue straight across Woodward avenue. For this reason it was controverted as to whether or not he was on a crosswalk. At any rate, plaintiff was crossing at a place representing an extension of Piquette into Woodward avenue. He was, it was conceded upon argument, not jaywalking.

Upon favorable view (verdict having been directed for defendant) plaintiff looked to his left and right before venturing into the street. To his left were 2 cars, about 2-1/2 blocks away. To his right were 2 more, southbound, also about 2-1/2 blocks away, being driven between 25 and 30 miles per hour, "the regular speed there." He decided it was safe to cross. He ventured into the street. When he got to the streetcar tracks, about in the middle of the street, he again looked to his right. The southbound

cars were then "about a block and a half away." He concluded that "the speed seemed to be just the same, about 25 or 30, so I looked and continued on across." He cleared the first car but was struck by the second, when about 3 feet from the curb. He had, he says, "started to rush" but, like the pedestrian in *Bartlett v. Melzo,* 351 Mich 177, he didn't make it.

At the close of plaintiff's proofs motion was made for directed verdict on the ground that plaintiff had not shown defendant's negligence, or his own freedom from contributory negligence.

We now reach the precise issue before us. It is phrased, in appellant's statement of questions involved, accepted by appellee, as follows:

"Did the trial court err in refusing to permit plaintiff to reopen proofs immediately following the close of plaintiff's case and defendant's motion for directed verdict, to enable plaintiff to explain the distance he meant in his reference to city 'blocks' and to have the jury view the scene of the accident?"

It will have been observed, in what has been stated heretofore, that the word "block" has been employed as a unit of distance. It was used both by plaintiff and defendant in depositions taken before trial, in plaintiff's direct examination, in his cross-examination, and in his answer to interrogation by the court. At no time during the trial, or prior thereto, was it asserted by anyone that the word was so vague as to be meaningless.* The word is a part of our

---

* The defendant's deposition discloses the following:
"*A.* They were there at least alongside of me some distance before the accident.
"*Q.* Would you say at least a block?
"*A.* No, I wouldn't say that, no.
"*Q.* Two blocks?
"*A.* No, I don't know for sure. Possibly a quarter of a block.
"*Q.* By a quarter of a block approximately how many feet do you have in mind?
"*A.* I don't have any number of feet in mind.
"*Q.* Well, what approximate distance do you have in mind when you say a quarter of a block?
"*A.* Well, I don't know, whatever size an average block would be."

common speech. It is not, it is true, a word of precise meaning, since we have short blocks and long blocks, just as we have short tons and long tons, but it is capable of precise definition in any context should precision be material.

Upon arguments upon the motion the court expressed concern over the lack of evidence in the record as to distances involved, the term "block," as noted, having had frequent use. The following transpired:

"*The Court:* All right; you figure it. How much was he going?

"*Mr. Bloom:* I will calculate it and tell you in a moment. I haven't made an exact calculation at this point. If we take the average block of approximately 500 feet, 5,280 feet in a mile, this plaintiff testified he walks about 5 miles an hour, that is approximately 7-1/2 feet a second. He walked from about the car tracks to about the middle of the second lane. The average lane is 10 feet wide. He walked about 15 feet. It takes him about 2 seconds with some degree of variance because of the moment's hestitation at the streetcar tracks which he testified to. Now at 45 miles an hour defendant's car would travel 66 feet per second. If we allowed approximately 3 seconds for that, we would cover approximately 200 feet. If we allowed 4 or 5 seconds for that, it covers twice as many as that, that is, a city block. Any less time than that and he is exceeding the 45 miles an hour. That is a matter of statistics.

"*The Court:* There is nothing here—

"*Mr. Bloom:* Just the average block.

"*The Court:* I don't know anything about an average block.

"*Mr. Bloom:* It is common knowledge that there are 5,280 feet in a mile, about 12 ordinary blocks in a mile. So the average block is 1/12 of 5,280 feet.

"*The Court:* I don't know of any such rule here in Detroit. Possibly the blocks are less regular here than most any other place I have ever seen.

"*Mr. Bloom:* Well, if the court feels that we ought to establish or we should have established the distance in feet instead of blocks, I move to reopen the proofs for the purpose of establishing that in feet instead of blocks.

"*The Court:* You are through with your case now."

In thus denying plaintiff's motion to reopen to establish the meaning of "block" in terms of length in feet the court was in error. We recognize, of course, and have often held, that a motion to reopen proofs is a matter within the discretion of the court. But the discretion must be a sound judicial discretion. Here the case had not proceeded to such a point, nor had conditions so changed, that any undue advantage would be taken by plaintiff. The principles involved were well stated in *Bommer* v. *Stedelin* (Mo App), 237 SW2d 225, 229, wherein the court held:

"There was no showing of surprise to defendants or of inconvenience to the court, parties, counsel, or jury or that the adverse party would have been deceived or prejudiced in any manner by granting the leave. The ruling on the motion for a directed verdict had not yet been made. The court denied plaintiff the opportunity to offer evidence to prove that defendants owned and operated the parking facility, while at the same time directing a verdict against plaintiff for failure to prove such fact. This constituted an abuse of discretion."[*]

Since the case must be returned for a new trial we will not comment upon the allegations (and denials) of negligence and contributory negligence argued to us upon appeal.

Reversed, and remanded for new trial. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

---

[*] See, also, *Mitcham* v. *City of Detroit*, 355 Mich 182.