*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADVISACARE HEALTHCARE SOLUTIONS, INC, d/b/a ADVISACARE, a Michigan corporation,

Plaintiff-Appellee,

UNPUBLISHED
March 30, 2023

v

No. 359631
Kent Circuit Court
LC No. 18-10464-NF

PROGRESSIVE MARATHON INSURANCE CO,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting plaintiff's motion to re-open the case and ordering defendant to pay certain charges incurred by its insured, as well as penalty interest and attorney fees. We vacate the order in part and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2018, XM, a minor, was injured in an automobile accident. Defendant was the insurer under a no-fault insurance policy issued to XM's father. XM required numerous lifetime health services, including attendant care and nursing care. Plaintiff, a healthcare provider that provided various services, durable medical equipment, and supplies to XM, filed suit against defendant in 2018 asserting defendant's liability for those costs.

The parties entered into a settlement agreement on January 21, 2020. Relevant to this appeal, the settlement agreement included plaintiff's release of its claims for certain no-fault personal injury protection benefits that had been incurred on or before October 27, 2019. In the agreement, the parties also acknowledged that

there are no carve-outs or exceptions made within this Settlement Agreement regarding any benefit or medical invoice and that this agreement covers all damages claimed (or that could have been claimed) by **ADVISACARE** through **OCTOBER 27, 2019**, other than the following specific exceptions:

-1-

- The [redacted settlement amount] does not include past due supply/equipment charges for which Progressive had already agreed to make voluntary payments to **ADVISACARE**, but, upon information and belief, have not been paid to date (or which may have been partially paid or paid during the course of the parties finalizing the terms of this release). The invoice numbers excluded from this settlement are:

  o 55429

  o 34709

  o 37641

  o 37731

  o 37734

  o 40546[1]

The settlement agreement also contains a provision that states:

As a provision of this settlement, **PROGRESSIVE** has agreed to pay certain fixed rates, and **ADVISACARE** has agreed to accept certain fixed rates, for care/benefits provided by **ADVISACARE** to [XM]. These rates, which are for a finite, fixed period of time, are as follows:

- Upon submission of reasonable proofs as required by the No-Fault Act, Progressive will pay a high-tech aide rate of [redacted amount]/hour from October 28, 2019 through June 30, 2021 for care provided through **ADVISACARE** . . . By agreeing to this rate for the prescribed time period, **PROGRESSIVE** is in no way waiving any rights, defenses, or privileges it may have under its policy or the law for any claimed high-tech aide care provided to [XM] on or after July 1, 2021. [*Id*. at 2-4.]

The settlement agreement also contains similar provisions setting rates for nursing care for the same time period and housing assistance from October 28, 2019 through February 28, 2021. Those provisions contain similar non-waiver language applicable to "LPN, RN, or blended care" claimed on or after July 1, 2021 and to "housing charges" claimed on or after February 28, 2021. The settlement agreement also provides that any disputes regarding its terms will "remain within the jurisdiction of Kent County Circuit Court through Case No. 18-10464-NF."

The trial court subsequently entered a stipulated order dismissing plaintiff's case with prejudice. In August 2021, plaintiff filed a motion entitled "Motion to Re-Open Case and Order

---

[1] Invoice numbers that are not at issue in this appeal have been removed from the quoted provision above for ease of reference.

Requiring Settlement and Other Payments By Defendant Progressive." In its motion, plaintiff contended that defendant had not paid six invoices for supplies/equipment that were due and owing, specifically invoice numbers 34709, 37641, 37731, 37734, 40546, and 55429 (the 2019 invoices). Plaintiff argued that defendant had recognized its obligation to pay these invoices, as reflected in the settlement agreement. Plaintiff did not attach the emails themselves to the motion, or otherwise attach proof of non-payment. Plaintiff also claimed that an attorney for defendant had stated in an email to XM's family's attorney that "Progressive will continue with the status quo for the attendant care for an additional 30 days after July 1," but that defendant had denied bills for attendant care, medical supplies and respiratory therapy incurred in July 2021. Plaintiff requested that the trial court reopen the case, order defendant to pay the 2019 invoices and pay for the services billed by plaintiff for July 2021. Plaintiff also sought penalty interest and attorney fees.

Defendant responded to plaintiff's motion, arguing that the settlement agreement specifically excluded the invoices plaintiff had listed, as well as services rendered after June 30, 2021. Therefore, defendant argued, plaintiff could not seek to reopen the case and enforce the settlement agreement regarding those bills; rather, plaintiff should have filed a new lawsuit if it believed payment was owed. Defendant also stated that it "disputes that all of the claimed invoices are necessarily outstanding." Defendant also argued that an email from its attorney to XM's family attorney was not a binding agreement between plaintiff and defendant to extend the agreed-upon rates; in any event, that statement only referred to attendant care, not therapy or durable medical equipment. Defendant also argued that, even if the trial court were to reopen the case, there was no legal basis for the trial court to order immediate payment of the allegedly due and owing 2019 invoices, July 2021 bills, or attorney fees and costs, because plaintiff would have to prove that the amounts were actually due and owing and allow defendant an opportunity to dispute the reasonableness of the charges under the no-fault act.

The trial court held a hearing on plaintiff's motion on September 17, 2021. The parties argued consistently with their motion and response briefs. The trial court orally granted plaintiff's motion at the hearing. The trial court subsequently entered an order requiring defendant to (1) "fully pay within seven days" the 2019 invoices, as well as penalty interest, (2) "pay AdvisaCare's charges for care and other accommodations provided to [XM] for the entire month of July 2021 in the same manner required parties' settlement agreement," and (3) pay attorney fees to plaintiff in the amount of $4,918.75.

Defendant moved for reconsideration in November 2021. In this motion, defendant argued that the trial court had been misled into believing that the 2019 invoices were due and owing, when in fact four of them had been fully paid, one had been partially paid with the remaining balance denied, and one had never been submitted to defendant. Defendant attached the relevant invoices, payment details (including check numbers) and explanation of benefits (EOB) forms to its motion. Defendant also argued that the interest and attorney fee calculations submitted by plaintiff were inaccurate as a result of these payments. Defendant also argued that the trial court had exceeded its authority by ordering defendant to pay rates higher than the fee cap provided in MCL 500.3157 for treatments rendered after July 1, 2021, and had further erred by ordering defendant to pay all bills incurred by plaintiff in treating XM for the month of July 2021, based only a statement from defendant's attorney concerning attendant care.

The trial court denied defendant's motion for reconsideration, stating that defendant's motion presented the same issues previously ruled on by the trial court and failed to demonstrate a palpable error by which the court and the parties had been misled. This appeal followed.

## II. THE TRIAL COURT'S DECISION TO RE-OPEN THE CASE

At the outset, defendant argues that the trial court should not have reopened the case at all, because the 2019 invoices and any bills for July 2021 were outside the settlement agreement; rather, defendant argues that plaintiff was required to file a new lawsuit to raise these claims. We disagree.

Settlement agreements are contracts, and we review de novo questions concerning their interpretation and application. *Kloain v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). In interpreting a contract, courts must not create ambiguity where none exists, *Mahnick v Bell Co*, 256 Mich App 154, 159; 662 NW2d 830 (2003), and must give the words in a contract their "plain and ordinary meaning that would be apparent to a reader of the instrument," *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). We review for an abuse of discretion a trial court's decision to reopen a case. *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959).

With regard to the 2019 invoices, although defendant argues that they were specifically excluded from the settlement agreement, the language of the agreement shows that the exclusion was from the lump settlement amount paid by defendant under the agreement, and that the reason for the exclusion was that defendant "had already agreed to make voluntary payments" for those specific invoices (and may have already partially paid them). Consequently, the payment of the invoices was part of the settlement agreement even though the amount was not included within the settlement amount. Finally, the settlement agreement provided that any disputes regarding the terms of the settlement agreement would be litigated in the trial court under the existing case number.

In its motion to reopen the case, plaintiff claimed that defendant had failed to pay certain invoices, despite having agreed to do so, as memorialized in the settlement agreement. Therefore, the interpretation and application of the settlement agreement was a material part of the dispute between the parties. The plain language of the agreement, including the broad language concerning the litigation of disputes, indicates that the parties agreed to resolve their disputes before the trial court under the existing case number. *Rory*, 473 Mich at 464.

Similarly, plaintiff's claim concerning the July 2021 bills involved its allegation that defendant had agreed to a modification or extension of various terms of the settlement agreement. Resolution of that claim requires an analysis of the settlement agreement's terms. The language of the agreement indicates that the parties had agreed to resolve disputes of this type before the trial court under the existing case number. *Id*.

In light of the unambiguous language of the settlement agreement and the nature of plaintiff's claims, the trial court did not abuse its discretion by reopening the case. *Bonner*, 356 Mich at 541. We affirm the trial court's order to the extent that it reopened case number LC No. 18-10464-NF.

-4-

## III. THE 2019 INVOICES

Defendant also argues that the trial court erred by ordering it to pay the 2019 invoices. Specifically, defendant contends that the trial court erred by ordering it to pay invoices that it had already paid, or by ordering the unpaid or partially-paid invoices to be paid in full. We agree that defendant cannot be compelled to pay invoices that it has already paid in full. However, we disagree that defendant cannot be compelled to fully pay any unpaid or partially-paid invoices.

Plaintiff maintains that we should not consider defendant's argument because it was raised for the first time in a motion for reconsideration. We disagree. It is true that an issue that is raised for the first time in a motion for reconsideration is generally not preserved for appeal. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). However, as noted, in this case defendant did raise (in response to plaintiff's initial motion) the issue of the lack of proof that the specific invoices were due and owing; further, although defendant did not provide specific documentary evidence of payment until filing its motion for reconsideration, neither did plaintiff provide any proof of the outstanding debt besides mere recitals in its motion. A party seeking to recover a debt under a contract is, at some point, obligated to prove the amount of the debt and that it is due or overdue. See, i.e., *Mich Chandelier Co v Morse*, 297 Mich 41, 47; 297 NW2d 64 (1941). In light of defendant's argument, in response to plaintiff's motion, that the issue of what invoices were due (and when they came due) needed to be explored, we decline to treat this argument as unpreserved for appeal.

The trial court ordered defendant to "fully pay" the 2019 invoices. At the risk of sounding reductive, invoices that have already been fully paid have been fully paid; the indebtedness represented by them has been satisfied and no payments remain due on them. *Id*. at 47 (defining "due" as "owed, owing, owing and unpaid, remaining unpaid, an indebtedness,"). To the extent that defendant has already fully paid any specific invoice, the trial court lacked the authority to order defendant to pay those invoices a second time. It is axiomatic in law that, although there may be multiple judgments, there may only be one full satisfaction of a claim. See *Hanley v Mazda Motor Corp*, 239 Mich App 596, 601; 609 NW2d 203 (2000). Therefore, we must vacate the trial court's order to the extent it may be interpreted as obligating defendant to pay the 2019 invoices regardless of their status as paid, partially paid, or unpaid.

We disagree, however, with defendant's assertion that it is permitted at this point not to pay or to partially pay any of the 2019 invoices. Defendant argues that it "never received" invoice 55429; however, defendant was sufficiently aware of its existence to refer to it by invoice number in the settlement agreement entered into at the beginning of 2020. Similarly, defendant argues that it "partially paid" invoice 40546 in May 2019 but denied the remaining portion because plaintiff had failed to submit the bill within one year of service as required by the no-fault act. However, if it was defendant's position in May 2019 that it did not owe any further amounts on invoice 40546 because the remainder of the charges were invalid under the no-fault act, one might have expected that fact to have been reflected in the settlement agreement. Instead, the agreement could be read as reflecting defendant's agreement that it had paid or would pay that invoice as part of the overall settlement negotiation between the parties; plaintiff may well have relied on this agreement in agreeing to exclude the invoices from the lump settlement calculation. At this late hour, defendant should be estopped from flyspecking the 2019 invoices, on equitable grounds if

nothing else.  See *Lakeside Oakland Dev.*, *LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002).

In sum, we agree with the trial court that defendant is responsible for payment of the 2019 invoices.  However, defendant cannot be required to pay bills that it was already paid.  Therefore, we vacate the trial court's order to the extent it lists the 2019 invoices and orders that a specific sum be paid, and we remand for further proceedings, including a determination of the extent to which the invoices in question remain unpaid, and for entry of an order requiring defendant to make payment to that extent.[2]  Because the calculated penalty interest and the attorney-fee awards are based, at least in part, on the presumption that all of the 2019 invoices remained unpaid, we vacate that portion of the trial court's award as well.

IV.  JULY 2021 CHARGES

Defendant also argues that the trial court erred by ordering it to pay plaintiff's "charges for care and other accommodations provided to [XM] for the entire month of July 2021 in the same manner required by the parties' settlement agreement."  We conclude, based on the statements of the parties' counsel at oral argument, that this issue is moot.

MCL 500.3157 was amended in 2019 to establish payment caps applicable to the treatment or rehabilitative occupational training provided to "an injured person for an accidental bodily injury covered by personal protection insurance" after July 1, 2021.  2019 PA 21 (effective June 11, 2019).  The parties appear to agree that the upcoming change to the law was the reason that the settlement agreement's agreed-upon rates (for various types of care to XM) ended on June 30, 2021.  However, this Court held in *Andary v USAA Cas Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487), lv gtd 979 NW2d 823 (2022), that MCL 500.3157 does not apply to persons (like XM) who were injured before the effective date of the amendment.

At oral argument, counsel for defendant represented that, after this Court's decision in *Andary* was issued in August 2022, defendant in fact paid all of the July 2021 charges at the rates specified in the settlement agreement for the preceding time period.  Defendant therefore no longer seeks relief from this portion of the trial court's order, except to the extent that any part of the trial court's attorney-fee or penalty interest award was based on this non-payment. Counsel for plaintiff agreed that the issue was moot, but argued that some of the July 2021 bills had not been timely paid and that the trial court should therefore determine penalty interest.  The parties having agreed that the principal issue concerning the July 2021 invoices is moot, we leave undisturbed the portion

---

[2] At oral argument, counsel for defendant indicated that the 2019 invoices had been paid in full, with the exception of $3,500 in charges that defendant had denied as untimely.  Counsel for plaintiff stated that, despite the fact that nearly a year and half has elapsed since the trial court's order was entered, plaintiff still could not confirm whether any or all of the 2019 invoices had been paid.  As stated, we hold that the invoices were part of the settlement agreement and should be paid in full.  Therefore, on remand, and absent a resolution of the issue by the parties, the only remaining issue regarding the 2019 invoices is whether or to what extent they remain unpaid; if the trial court determines that any of the 2019 invoices remain unpaid in full or in part, it should order that the unpaid amounts be promptly paid in full by defendant.

of the trial court's order directing defendant to pay plaintiff's July 2021 charges in accordance with the rates set forth in the settlement agreement.

## V. ATTORNEY FEES AND PENALTY INTEREST

The trial court's order directed defendant to pay "$6,036.12 in penalty interest through September 31, 2021" on the 2019 invoices, and additionally ordered defendant to pay plaintiff's attorney fees in the amount of $4,918.75. The penalty interest amount, being premised on all six 2019 invoices being unpaid, must be vacated in accordance with our remand on that issue. However, defendant does owe penalty interest on any of those invoices that were untimely paid or partially paid. Further, because it is unclear whether the attorney-fee award was based, in whole or in part, on the allegedly unpaid 2019 invoices, that amount must also be vacated. Regarding the July 2021 charges, plaintiff did not specifically request an award of attorney fees from the trial court on that issue, and there is no indication that the trial court based its attorney-fee award, in whole or in part, on that issue. Therefore, the simplest course of action, and the one we adopt, is to vacate the awards of penalty interest and attorney fees in their entirety. On remand, if plaintiff wishes to do so, it may bring a motion for penalty interest and attorney fees concerning the 2019 invoices that were *actually* unpaid, untimely paid, or partially paid,[3] as well as present any argument concerning its entitlement to attorney fees relating to the July 2021 charges. Defendant would, at that point, be entitled to contest the reasonableness of the rates and amount of hours billed in the usual manner. See *Smith v Khouri*, 481 Mich 519, 530-534; 751 NW2d 472 (2008).

In summary, we vacate in part the trial court's order. We remand for further proceedings not inconsistent with this opinion. No costs may be taxed, no party having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford

---

[3] We note that any future attorney-fee award based on the 2019 invoices should include consideration of the extent to which plaintiff's own practices, including its inability to state with certainty whether it has received payment for services it has billed, necessitated additional attorney fees or other costs.