*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF DANIEL K. WALLACE.

---

BYRON P. GALLAGHER, JR., Personal Representative of the ESTATE OF DANIEL K. WALLACE,

   Plaintiff-Appellee,

and

WALLACE STORAGE CENTER, LLC, GOMINIS OF MICHIGAN, LLC, and SUMMIT ASSET MANAGEMENT, LLC,

   Plaintiffs,

v

TRACY L. WALLACE,

   Defendant-Appellant,

and

TL AUGUST, LLC, doing business as GOMINIS OF WILLIAMSTON,

   Defendant.

UNPUBLISHED
May 11, 2026
9:33 AM

No. 370747
Ingham Probate Court
LC No. 18-001266-CZ

---

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

  This case is before us a second time. In the original appeal, Tracy L. Wallace and TL August, LLC, appealed as of right the probate court's judgment in favor of Byron P. Gallagher,

Jr., as successor personal representative of the estate of Daniel K. Wallace, in the amount of $525,860.[1] We affirmed the probate court's finding that Tracy breached her fiduciary duties but vacated the probate court's inclusion of $127,050 in tax penalties and interest in the judgment because those tax-related damages were speculative, and we remanded the case to the probate court in accordance with those conclusions.[2] On remand, the probate court entertained additional evidence regarding those tax-related damages and found that Gallagher was entitled to $192,858.08 in such damages, as well as statutory pre-judgment interest in the amount of $104,016.83. Thus, the probate entered final judgment in favor of Gallagher and against Tracy in the amount of $695,684.91.

In the instant appeal, Tracy appeals as of right that final judgment, raising two issues: (1) the probate court exceeded the scope of our remand instructions by entertaining additional evidence regarding tax-related damages and by adding such damages to the final judgment, and (2) the probate court erred by awarding Gallagher statutory pre-judgment interest because this case does not involve a typical "money judgment" under MCL 600.6013(8) that entitles a prevailing party to such interest. For the reasons set forth, we disagree with both arguments and affirm.

## I. BACKGROUND FACTS

In our original opinion, we set forth the following factual background of this case:

> Before his November 2011 death, Daniel was the sole member of Wallace Storage Center, LLC, GoMinis of Michigan, LLC, and Summit Asset Management, LLC (the LLCs), which he operated with Tracy, his ex-wife. Daniel's membership interests in the LLCs became assets of his estate upon his death.
>
> Daniel's will nominated Tracy as the personal representative, granted his tangible personal property to Tracy, and designated the trustee of The Daniel C. Wallace Trust No. 1 as the recipient of his residual property. Tracy was identified as the successor trustee and sole beneficiary under the trust. In January 2012, Tracy was appointed the personal representative of Daniel's estate. The couple's two children were identified as heirs, and a supplemental declaration identified Tracy as the successor trustee and beneficiary.
>
> For seven years after Daniel's death, Tracy continued to operate the LLCs and manage the estate. But the probate court found that Tracy failed to pay creditors' claims as ordered by the court. Accordingly, in August 2017, the probate court removed Tracy as personal representative, appointed Gallagher as the successor personal representative, and ordered Gallagher to provide a final accounting and satisfy claims against the estate.

---

[1] We will hereinafter refer to the parties by the same names used in our original opinion unless otherwise appropriate.

[2] See *In re Wallace Estate*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2022 (Docket No. 357441).

In September 2018, Gallagher filed a complaint on behalf of the estate and the LLCs against Tracy and TL August.[3] Pertinent to this appeal, the complaint alleged that Tracy had breached her fiduciary duties to the estate, which included the LLCs as assets. Following discovery, Gallagher moved for summary disposition. Gallagher presented evidence that Tracy had paid nonbusiness expenses from business expense accounts, failed to account for rents the LLCs received, failed to settle creditor claims, and had not filed taxes for the estate. Tracy and TL August did not present any evidence to refute the findings and conclusions of Gallagher's financial expert. They responded that Tracy did not owe fiduciary duties to creditors or the LLCs. They also argued that the estate's beneficiaries did not want Gallagher to pursue the litigation.

The probate court determined that Tracy breached her fiduciary duties to the estate, which included the LLCs as assets. But because the court determined there were genuine issues of material fact regarding damages, it ordered a bench trial on damages only.

At the bench trial, Tracy testified that she operated the LLCs in the same manner as Daniel had because her attorney instructed her to simply continue doing what Daniel had done. She admitted the LLCs' funds were comingled— deficiencies in an LLC account were covered with funds from another LLC account. But she claimed that no one objected to her methodology. She also acknowledged the estate had more liabilities than assets. She further admitted she failed to disclose some assets that should have been in the estate's inventory statement. But she defended her actions by claiming the estate's attorneys failed to properly advise her. She maintained she was simply trying "to be able to keep the boys a legacy of their dad."

One of Daniel's sons testified that Tracy "picked up where my dad left off." He also asserted he did not consent to the litigation. The probate court accepted an offer of proof that Daniel's other son would have testified that he did not consent to the litigation either. But the court opined that the children's wishes were irrelevant to the issue of damages.

Gallagher testified extensively about his efforts to determine the estate's assets and liabilities. Rent revenue was unaccounted for. All of the assets were not disclosed on the estate's inventory. Although approximately 2000 properties were listed in the estate's inventory, all but three of those properties were lost due to non-payment of taxes or foreclosures while Tracy managed the estate. Creditors filed approximately $4.8 million in claims against the estate. Gallagher determined the estate was insolvent—its assets were less than its liabilities.

---

[3] TL August was established by Tracy in 2014, and it was legally responsible for some of the operation of the other LLCs' assets.

Because financial records had not been properly kept, Gallagher hired Ryan Lowe, an expert in tax preparation and forensic accounting, to piece the financial information together. Lowe reconstructed the financial transactions of the LLCs and TL August. He entered bank statements and transactions into accounting software, reconciled them, and categorized them into various income and expense categories. Lowe compiled and summarized the financial records in his report, which was admitted into evidence over appellants' hearsay objection. Lowe provided detailed testimony regarding his analysis of the financial records and his calculations.

According to Lowe, the largest sources of loss to the estate were the use of the LLCs' accounts to pay for personal expenses, and various checks that were written to Tracy or "cash" from the LLC accounts. These personal expenses included automobile expenses, mortgage payments, utility payments, moving expenses, insurance premiums, and rent payments on Tracy's apartment. Lowe testified that Tracy's non-deductible personal use of the estate's funds resulted in taxable income to the estate for each year that Tracy managed it. Because Tracy did not file any income tax returns for the estate, Lowe included the penalties and interest for the unfiled returns in his calculations of the estate's losses. Lowe's calculations also included TL August's profit from the sale of storage pods it had purchased after Wallace Storage defaulted on the loan. Based on his analysis of the financial records, Lowe opined that Tracy's personal misuse of estate funds resulted in a $525,860 loss to the estate. But this was a "very conservative opinion on loss" because he credited all legitimate expenses and expected compensation.

The probate court found that the estate was entitled to a judgment of $525,860 against Tracy and TL August. Relying on Lowe's detailed analysis of loss, the court found

> Tracy L. Wallace did not properly settle the estate but operated the estate to extract cash and assets for her personal use or to benefit her family. Tracy L. Wallace testified that she was not provided any guidance from the lawyers she hired other than to continue to operate the family business as usual. She apparently interpreted this to include writing checks to herself and to cash, making payments to an American Express card used for personal items, withdrawing funds for personal housing expenses, paying personal State Farm car insurance for family, paying for health insurance for her family, paying personal fuel charges and making personal auto payments. Once removed from her position as Personal Representative, she continued to administer the estate and manage the LLCs for her personal benefit.

> Importantly, after being removed as Personal Representative she orchestrated a transfer of storage pods from the estate to Defendant TL August LLC, who then sold the pods for a profit.

-4-

> . . . [E]veryone concedes that the estate was insolvent at day one. . . . There would be no transfer of any legacy to the boys. Defendant Tracy Wallace stripped cash and assets and engaged in acts of defalcation while operating the business for over 5 years keeping the claimants at bay. Her breach of fiduciary duty damaged the estate significantly. [*In re Wallace Estate*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2022 (Docket No. 357441), pp 1-4 (footnotes omitted).]

On appeal, Tracy and TL August argued, in relevant part, that the probate court erred by finding that Tracy breached her fiduciary duties and by imposing an excessive amount of damages because the court included tax penalties and interest that had not yet been assessed. *Id*. at 5-7. We disagreed with the fiduciary-duty argument, reasoning that "[t]he record establishes that Tracy failed to file tax returns, failed to maintain records, used estate funds for personal expenses, and profited from a sale of estate property to her own company." *Id*. at 7. However, we agreed with the damages argument:

> Lowe testified that Tracy's non-deductible, personal use of funds resulted in taxable income to the estate from 2011 to 2018. Because income tax returns were not filed, Lowe calculated that the tax penalties and interest would be $127,050. But there was no evidence that either the Internal Revenue Service or the State of Michigan had actually assessed tax penalties or interest against the estate. The estate's *potential* future liability for tax penalties and interest is uncertain and speculative. We find that the probate court clearly erred in surcharging Tracy $127,050 for tax penalties and interest, and vacate that portion of the judgment. [*Id*. at 8 (internal citation omitted).]

Accordingly, we affirmed the probate court in part and vacated in part, and remanded to that court "for entry of a judgment consistent with this opinion." *Id*. at 9. Tracy sought leave to appeal in our Supreme Court, which was denied in June 2023. *In re Wallace Estate*, 511 Mich 1018 (2023).

On remand, in February 2024, Gallagher filed a petition to enter final judgment. In that petition, Gallagher explained that "[i]n 2021 and 2022, the Estate filed federal and state income tax returns for tax years 2011-2021." Further, Gallagher explained, "[a]s of February 12, 2024, the balance of the tax penalties or interest that have been assessed by the IRS to the Estate [for tax years 2011-2018] is $178,596.86." (Emphasis omitted.) In addition, "[a]s of February 12, 2024, the balance of the tax penalties or interest that have been assessed by the State of Michigan to the Estate is $14,261.22." (Emphasis omitted.) Gallagher thus sought final judgment in the amount of $695,684.91, which represented $398,810 in damages that was affirmed by this Court; $178,596.86 in federal tax penalties and interest; $14,261.22 in state tax penalties and interest; and $104,016.83 in pre-judgment interest under MCL 600.6013.

In April 2024, Tracy and TL August filed a response, arguing that Gallagher only was entitled to final judgment in the amount of $398,810, which represented the damages affirmed by

this Court. Tracy and TL August reasoned that Gallagher was not entitled to any damages for tax penalties and interest because inclusion of those damages "contradicts the specific mandate of the Court of Appeals in this case which specified 'remand for entry of a judgment consistent with this opinion.' " They also reasoned that Gallagher was not entitled to statutory pre-judgment interest because "[a]n ordered repayment of amounts taken from an estate in a breach of fiduciary duty surcharge . . . falls outside of judgments for which prejudgment interest is warranted."

At the hearing on the matter, the probate court ruled in favor of Gallagher, first reasoning that statutory pre-judgment interest was appropriate:

> The argument that we should ignore the statutory interest component because the person who the judgment is being entered against is the sole beneficiary of the estate fails for the reason that there were major creditors to this estate that really were being bypassed by the actor, the defendant and the corporation, and so the judgment replenishes the estate to allow for creditors to be paid. Those creditors really are the party in interest here for which Mr. Gallagher is representing as the personal representative of the estate. And they're entitled to the interest associated with those actions that has caused them to wait for their claims to be paid that's why the statutory interest should accrue.

Next, the probate court reasoned that Gallagher was entitled to damages for federal and state tax penalties and interest:

> [The Court of Appeals] remanded it for entry of a judgment consistent with the opinion. I don't believe that its being contested here that the actual tax liability has been determined and that the Court's original -- the Court's original determination of the amount has now been, which was speculative as declared by the Court of Appeals, has now been determined by the federal government and the state. Which is not the 127,050 which was speculative but a different amount * * * [i]n comparison. So a judgment now in that amount, which is being contested, is consistent with the Court of Appeals decision because what the Court of Appeals is saying is I can't issue an order for that not because its taxes but because it wasn't determinable at that time but now it's been determined. . . .

The same day, the probate court entered its final judgment providing as follows: "A money judgment is hereby entered in favor of Plaintiff and against Defendant in the amount of **$695,684.91**, as of February 12, 2024, which represents damages in the amount of $591,668.08 and statutory judgment interest (from 9/28/18 to 2/12/24) in the amount of $104,016.83." (Emphasis in original.)

Tracy appealed to this Court, raising two issues.[4] First, Tracy argues that the probate court erred when it exceeded the scope of our remand instructions by including tax penalties and interest

---

[4] In May 2024, Tracy filed a claim of appeal from the April 2024 final judgment, and the parties filed their respective briefs on appeal in late 2024. However, in June 2025, this Court received

in its final judgment. Tracy asserts that the probate court disregarded our mandate to reduce the final judgment by $127,050 and, instead, erroneously allowed Gallagher to introduce additional evidence that he did not introduce during the original bench trial regarding tax penalties and interest. Second, Tracy argues that the probate court erred by awarding Gallagher statutory pre-judgment interest. In this regard, Tracy observes that she is the residual beneficiary of the estate, and Gallagher, as the personal representative, did not himself suffer any "damages" as a result of her breach of fiduciary duties upon which pre-judgment interest could be added.

Gallagher responds that the probate court did not exceed the scope of our remand instructions because its decision to entertain additional evidence regarding tax penalties and interest was consistent with our opinion. In other words, Gallagher reasons, we remanded this case to the probate court simply because his proofs regarding that question were insufficient, thereby allowing him another opportunity to present sufficient proofs. Further, with regard to statutory pre-judgment interest, Gallagher argues that the creditors of the estate, via the estate itself, were damaged by Tracy's breach of fiduciary duties, so pre-judgment interest is appropriate for those damages.

## II. STANDARD OF REVIEW

"Whether a trial court properly interpreted the scope of a remand is a question of law that this Court reviews de novo." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 546; 15 NW3d 356 (2023). Similarly, "[a] trial court's interpretation of the prejudgment interest statute is a question of law, which this Court reviews de novo." *Attard v Citizens Ins Co of Am*, 237 Mich App 311, 319; 602 NW2d 633 (1999).

## III. DISCUSSION

## A. SCOPE OF REMAND

notice that Tracy initiated a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Michigan. Consequently, this Court closed this case without prejudice in light of the "pending bankruptcy proceeding that deprives this Court of the authority to continue its review of this case, 11 USC 362 . . . ." *In re Wallace Estate*, unpublished order of the Court of Appeals, entered July 7, 2025 (Docket No. 370747). Thereafter, on January 21, 2026, Gallagher moved to reinstate the appeal in light of the bankruptcy court's January 16, 2026 "comfort order" providing that "[t]he Appeal is not stayed by the Debtor's bankruptcy and the automatic stay as to the Appeal, to the extent applicable, is lifted," and "[t]he Court of Appeals may continue with the Appeal to its conclusion." This Court accordingly granted the motion to reinstate the appeal. *In re Wallace Estate*, unpublished order of the Court of Appeals, entered February 4, 2026 (Docket No. 370747).

Tracy first argues that the probate court exceeded the scope of our remand instructions by including federal and state tax penalties and interest in its final judgment. We disagree.[5]

"The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Law Offices of Jeffrey Sherbow*, 347 Mich App at 546 (quotation marks and citation omitted). "When an appellate court remands a case without instructions, a lower court has the same power as if it made the ruling itself." *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014) (quotation marks and citation omitted). However, "[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Business Machines Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted). "[O]n remand, the lower court is free to consider and decide any matters left open by the appellate court's mandate." *Law Offices of Jeffrey Sherbow*, 347 Mich App at 546 (cleaned up). "[A] motion to reopen proofs is a matter within the discretion of the court. But the discretion must be a sound judicial discretion." *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959).

We acknowledge that our original opinion in this matter "remand[ed] for entry of a judgment consistent with this opinion." *In re Wallace Estate*, unpub op at 9. Moreover, our original opinion did not expressly direct or allow the probate court to entertain additional evidence regarding tax penalties and interest on remand. Thus, it is arguable that this Court directed the probate court to complete the limited, ministerial task of entering a reduced judgment, in the same manner that this Court often directs the trial court to enter summary disposition in one party's favor. See, e.g., *Stanley v Detroit*, 347 Mich App 117, 139-140; 14 NW3d 197 (2023). Further, this Court is capable of expressly directing or allowing the trial court to entertain additional evidence on remand, see, e.g., *Greer v Alexander*, 248 Mich App 259, 270; 639 NW2d 39 (2001), but our original opinion here did not do so.

However, we must conclude that, under the circumstances of this case, the probate court did not err or otherwise abuse its discretion by allowing Gallagher to submit additional evidence regarding tax penalties and interest on remand. Our original opinion "vacated" the inclusion of tax penalties and interest in the original judgment. It did not "reverse" the inclusion of tax penalties and interest. "Vacate" means "[t]o nullify or cancel; make void; invalidate." Garner et al., *The Law of Judicial Precedent* (St. Paul: Thomson/West, 2016), p. 809. "Reverse" means "[t]o overturn (a judgment or ruling), esp. on appeal." *Id*. at p. 806. While the difference may be subtle, "reversing" indicates that the reasoning of an opinion or a ruling was wrong, while "vacating" returns the reasoning or ruling of the case to a blank slate. Therefore, the fact that this Court

---

[5] Tracy also asserts that the doctrine of res judicata barred the probate court from including tax penalties and interest in the judgment on remand. However, "[a] party may invoke the doctrine [of] res judicata only when the previous decree is a *final* decision." *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 379; 521 NW2d 531 (1994). Here, because our original opinion vacated the probate court's original judgment, and appellate proceedings are ongoing, not final, res judicata does not apply. See *City of Troy Bldg Inspector v Hershberger*, 27 Mich App 123, 127; 183 NW2d 430 (1970).

vacated, not reversed, the probate court's original decision to include tax penalties and interest in the judgment indicates that the probate court was not necessarily incorrect to do so, only that it was incorrect to do so without additional facts or evidence. In other words, the probate court was given the ability to re-visit the issue in light of the circumstances explained *infra*.

Recently, in *Carol J Lockhart Revocable Trust v Paramount Enterprises Land, LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 3, 2024 (Docket No. 367618), this Court recognized that when we remand to a lower court after vacating, not reversing, an award of damages, the lower court may retain discretion to entertain additional evidence on remand regarding damages:

> Before we can determine whether the trial court complied with our remand order, we must first reiterate the scope of that order. In other words, we must clarify what we were trying to convey in the last case. Our prior order did not hold that PEL was necessarily unable or unentitled to establish that it suffered compensable damages. We neither required the trial court to hold an evidentiary hearing nor prohibited it from doing so. We emphasize that the prior order "*vacated*"—as opposed to *reversed*—the trial court's judgment awarding damages and remanded for further proceedings "*as necessary*." In order to understand and clarify the scope of the prior order, we explain what each of these terms mean in the context of the prior opinion.

> * * *

> First, we vacated the damages award. We did not reverse it. This distinction is significant. We did not hold that the damages award necessarily should have been zero, but rather that the damages award was either unreviewable under the circumstances or must be set aside and reconsidered in light of an underlying substantive error.

> * * *

> In sum, by using the word "vacate," we merely cleared the prior order. Because we vacated the damages award and did not reverse it, we did not hold that PEL had no damages. Nor did we prohibit the trial court from reconsidering whether PEL suffered any damages. [*Id*. at 8-10 (internal citation omitted).]

Thus, we concluded that primarily in light of the distinction between vacating and reversing, as well as the fact that the original opinion indicated that the trial court could conduct additional proceedings "as necessary," the trial court on remand had the discretion to entertain additional evidence regarding damages. See *id*. at 14. We added that "the trial court need not reopen proofs," and "[w]hen deciding whether to reopen proofs, trial courts may consider whether the party was previously diligent and whether the party would gain an unfair advantage. The trial court might consider that [the party] had a bite at the apple and must live with the litigation strategy that it chose." *Id*. at 13 (internal citation omitted).

While this Court's original *Carol J Lockhart Revocable Trust* opinion has the words that additional proceedings may be appropriate "as necessary," such language is not included in our

original opinion here. But, nonetheless, we find the *Carol J Lockhart Revocable Trust* reasoning to be instructive.[6] Thus, we conclude that the probate court here had the discretion to entertain additional evidence on remand, given that we merely vacated, not reversed, its original decision to include tax penalties and interest, and that our original opinion was silent on whether such evidence could be introduced on remand pending further developments in the separate tax proceedings.

In so concluding, we emphasize the unique factual and procedural posture of the matter before us. The possibility of the estate being subject to tax penalties and interest apparently was not discovered until Gallagher's accounting and, as expected, formal federal and state determinations of those matters required an extensive amount of time as well. It is understandable that Gallagher proceeded with this case seeking damages for anticipated tax penalties and interest in lieu of further delays to finally resolve that issue.[7] Given this background, of which the probate court was aware, it was within that court's discretion to entertain additional evidence regarding tax penalties and interest on remand. Thus, this does not raise concerns about allowing a party a second bite at the apple that would often be present when an unsuccessful party is allowed to present additional evidence on remand. Compare *Serijanian v Assoc Material & Supply Co*, 7 Mich App 275, 281; 151 NW2d 345 (1967) (recognizing judicial discretion to allow additional evidence where the party "has been diligent in prosecuting his claim").

Therefore, we affirm the probate court on this issue.

## B. PRE-JUDGMENT INTEREST

Tracy next argues that the probate court erred by awarding Gallagher statutory pre-judgment interest. Specifically, Tracy argues that the probate court erred by awarding pre-judgment interest because the surcharge order against her "is owed [to] the estate – an estate to which ultimately the defendant-appellant, herself, is the beneficiary." That is, Tracy reasons, "[t]here is no evidence plaintiff-appellee has sustained any loss under the circumstances of this case," so "[a]n award of prejudgment interest against a fiduciary is unwarranted where the benefit of such interest adheres solely to the benefit of the successor fiduciary making the claim." (Emphasis in original.) We disagree.

MCL 600.6013(8) generally provides that a prevailing party is entitled to "interest on a money judgment recovered in a civil action . . . ." "[I]t is well established that interest is calculated from the date the complaint is filed." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 257; 792 NW2d 781 (2010). "An award of interest is mandatory in all cases to which the statute applies." *Farmers Ins Exchange v Titan Ins Co*, 251 Mich App 454, 460; 651 NW2d 428

---

[6] See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017) ("Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value.").

[7] In fact, Gallagher did not file tax returns until the probate court ordered him to do so in its May 19, 2021 opinion following the bench trial. His testimony at the bench trial implies that he was concerned about Tracy's cooperation, or lack thereof, unnecessarily complicating matters before the probate court had resolved the case.

(2002) (cleaned up). "The purpose of MCL 600.6013 is to compensate the prevailing party for the expenses incurred in bringing an action and for the delay in receiving money damages." *Lech v Huntmore Estates Condo Ass'n*, 315 Mich App 288, 291; 890 NW2d 378 (2016) (quotation marks and citation omitted).

For the purposes of MCL 600.6013, the term "money judgment" is "[o]ne which adjudges the payment of a sum of money, as distinguished from one directing an act to be done or property to be restored or transferred." *Moore v Carney*, 84 Mich App 399, 404; 269 NW2d 614 (1978) (quotation marks and citation omitted). "There are several types of civil awards that are not a money judgment in a civil action, including money awards in drug forfeitures, divorce judgments, awards of back pay for wrongful discharge, and awards reflecting payment of a forced share in an estate." *Lech*, 315 Mich App at 291. Thus, "interest may be denied in proceedings that are not typical civil actions preceding an award of a money judgment." *Olson v Olson*, 273 Mich App 347, 353; 729 NW2d 908 (2006).

Initially, we agree with Tracy that Gallagher, as the appellee, did not himself suffer damages because he was merely the personal representative of the estate. However, a personal representative of an estate has a well-recognized obligation to appropriately exercise his or her powers for creditors as well as beneficiaries. See MCL 700.3712; MCL 700.1105(c). In this case, as we noted in our original opinion, "[c]reditors filed approximately $4.8 million in claims against the estate. Gallagher determined the estate was insolvent—its assets were less than its liabilities." *In re Wallace Estate*, unpub op at 3. The award of pre-judgment interest here, as the probate court observed, addresses the damages suffered by the creditors to that extent. See *Lech*, 315 Mich App at 291 (explaining that one of the purposes of statutory pre-judgment interest is to compensate for the delay in receiving "money damages").

Further, the instant case bears the hallmarks of a "typical civil action[] preceding an award of a money judgment" entitling a prevailing party to statutory pre-judgment interest. See *In re Forfeiture of $176,598*, 465 Mich 382, 388; 633 NW2d 367 (2001). The instant case was initiated by the filing of a complaint; the case proceeded as an ordinary civil action, as opposed to, for example, an administrative proceeding; and the final judgment ordered Tracy simply to pay a sum of money and did not "direct[] an act to be done or property to be restored or transferred." See *id*. at 386-388. Under these circumstances, we discern no reason to deviate from the ordinary rule that the statutory pre-judgment interest should be granted upon a money judgment when the statute applies. See *Farmers Ins Exchange*, 251 Mich App at 460.

Therefore, we affirm the probate court on this issue.

## IV. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

-11-